May Term,
1851.

BLAND *v.* THE STATE.

BLAND
*v.*
THE STATE.

The defendant was indicted for murder in the first degree. The jury found him guilty, as charged in the indictment, of murder in the first degree, and that he suffer death, &c. The Court rendered judgment on the verdict. Previously to the day named for his execution, the prisoner made his escape, and was afterwards retaken by the sheriff, and kept in custody until the then next term of the Court, at which term the prisoner was again brought before the Court by the sheriff, and, the fact of his escape, &c., being made known, the Court again awarded execution against him on the former judgment. *Held,* that there was no error in this.

A new trial is rarely, if ever, granted on account of newly-discovered evidence, if the only object of the evidence be to impeach the character of a witness.

It is not competent for a prisoner indicted for murder to give in evidence his own account of the transaction, related immediately after it occurred, though no third person was present when the homicide was committed.

By our statute, no judgment of any Court of record can be set aside on motion, unless such motion be made at the term at which such judgment was rendered.

*Friday,*
*June* 6.

ERROR to the *Greene* Circuit Court.

BLACKFORD, J.—This was an indictment, found at the *September* term, 1850, of the *Greene* Circuit Court, against *Hiram Bland,* for murder in the first degree. The person alleged to have been murdered was one *William Walker.* Plea, not guilty. The jury found the defendant guilty, as charged in the indictment, of murder in the first degree, and that he suffer death, &c.

The defendant moved for a new trial, but his motion was overruled. The Court then, at said *September* term, 1850, rendered judgment on the verdict. The judgment was to the following effect: That the defendant be taken to the place of execution on *Friday,* the 15th of *November* then next ensuing, and then and there, between the hours of ten o'clock in the forenoon and four o'clock in the afternoon of the same day, be hanged by the neck until he be dead.

Previously to the day named in said judgment for the defendant's execution, namely, on the night of the 28th of *October,* 1850, the defendant broke jail and made his

escape. He was afterwards, on the 2d of *January*, 1851, retaken by the sheriff, and kept by him in custody until the then next term of the Court. At the term last named, viz., the *April* term, 1851, the defendant was again brought before the Court by the sheriff; the said facts relative to his escape and recaption being made known to the Court. The prosecuting attorney thereupon moved the Court for judgment of death against the defendant, and that a time and place be designated for his execution.

The defendant then pleaded to the jurisdiction of the Court, but his plea was rejected. He also moved, on several affidavits, for a new trial, but the motion was overruled.

The Court afterwards demanded of the defendant what he had to say why the Court should not, upon the verdict and judgment herein rendered at the last term, proceed to judgment and execution against him, and designate the time and place of his execution. The defendant saying nothing further, it was considered and ordered by the Court that the defendant be taken to the jail of said county whence he came, and thence to the place of execution in said county, on *Friday*, the 25th of the then month of *April*, 1851, and that, between the hours of ten o'clock of the forenoon and four o'clock of the afternoon of the same day, at said place of execution, he be then and there hung by the neck till he be dead.

The first objection made by the defendant is, that his first motion for a new trial, made at the *September* term, 1850, was overruled.

The first cause shown for that motion was, that the verdict was contrary to the evidence.

The record contains all the evidence. The most material witnesses for the state were the wife and two children of the deceased; one of the children being a boy of about eleven years of age, and the other a girl of about fourteen years of age. These witnesses were present when the offence was committed, and they all expressly prove the defendant's guilt as charged in the indictment.

The most material witnesses for the defendant were

*Cynthia Bland* and her husband. These two witnesses, who, at the time of the transaction, were at a considerable distance from where it occurred, differ materially, as to its commencement, from said witnesses for the state. But taking the testimony of said two witnesses for the defendant as correct, still the evidence is, in our opinion, sufficient to sustain the verdict. There was some other testimony, but it does not materially affect the case.

The next ground shown for said motion, was that of newly- discovered evidence.

The evidence relied on as newly-discovered is shown by an affidavit, which says that the boy, to whose testimony we have alluded, made a statement, on the night after his father was killed, to the affiant, *James Bland*, relative to said homicide. That statement differs materially, as to how the affair began, from the statement afterwards made by the boy when a witness on the trial. The effect of this newly discovered evidence would be to impeach the boy's testimony. It is a general rule, that the discovery of such evidence is not a sufficient reason for a new trial. *M'Intire* v. *Young*, 6 Blackf. 496, and the cases there cited.—*Porter* v. *The State*, in this Court, *November* term, 1850 (1). There are, no doubt, exceptions to this rule, but we do not think the present case is one of them. The boy was young; the testimony of the other witnesses, present at the homicide, was substantially the same with his; and the statement relied on to show a variance was not as to the most material part of the boy's testimony.

The third reason assigned for said motion was the rejecting of certain evidence offered by the defendant.

A part of that evidence relates to the defendant's conduct on the night after the homicide, and on the next day, respecting the surrender of himself into custody on account of the transaction. It relates, also, to a statement made by the defendant, a half an hour after the homicide, of the circumstances under which it was committed. We think that part of the evidence offered was rightly rejected, on the ground that the defendant's said

conduct and statement do not appear to be any part of the *res gestæ.* It has been decided that it is not competent for a prisoner indicted for murder to give in evidence his own account of the transaction related immediately after it occurred, though no third person was present when the homicide was committed. *State* v. *Tilly,* 3 Iredell's Law Rep. 424. The other part of the rejected evidence relates to the defendant's knowledge that the deceased carried a butcher-knife. We do not see how evidence of such knowledge, under the circumstances of this case, could have benefitted the defendant. We think it was inadmissible as being irrelevant.

The last cause assigned for said motion is, that the Court gave erroneous instructions to the jury.

There were a great many instructions given. We have examined them with care, and do not consider any of them, when taken in connection with the evidence, as objectionable.

We are of opinion, therefore, that the said motion for a new trial was correctly overruled.

The defendant's next objection is the rejecting of his plea to the jurisdiction of the Court; which plea was filed when the defendant was brought, the second time, before the Court for an award of execution.

There was not the slightest ground for this plea. The defendant not having been executed conformably to the previous judgment, in consequence of his escape from custody, the Court had, after his recaption, the same jurisdiction over him, for the purpose of awarding execution, that they had when said judgment was rendered. The following case is in point: In 1716, one *Charles Ratcliffe* was convicted in *England,* of treason, and whilst he was under sentence of death, he escaped out of prison and went to *France.* About thirty years afterwards, he was taken and brought before the Court of King's Bench, and was asked what he had to say why execution should not be awarded and done upon him according to the said judgment. He pleaded that he was not the identical

*Charles Ratcliffe* named in the record. The attorney general replied that he was. The issue was found against the prisoner, and the Court awarded execution, appointing a day for that purpose, and he was beheaded accordingly. *Rex* v. *Ratcliffe*, 9 Hargrave's State Trials, 582.— 1 Wilson's Rep. 150.—Foster's Crown Law, 40.

The last of the defendant's objections is, that his motion for a new trial, made after his plea to the jurisdiction was rejected, should have been granted.

The affidavits on which this motion was founded, allege that said widow and son of the deceased had made statements (those of the widow since the trial, and those of the son before and since,) relative to said homicide. Those statements, which are set out in the affidavits, are, as to the commencement of the affair, much more favorable to the defendant than those made by said widow and son as witnesses on the trial.

This objection is not well founded. The judgment of death rendered against the defendant, at the previous term of the Court, was not vacated by his escape. It remained in force, though the day appointed for the execution had passed. When a prisoner, as in the present case, after having been sentenced to be executed, escapes, and is re-taken after the day appointed for his execution has passed, he may be brought again before the Court to have execution awarded against him on the former judgment. That appears by the case of *Rex* v. *Ratcliffe*, above cited. The prisoner, when thus brought before the Court, may plead a pardon, or that he is not the same person. What other pleas, or what motions, he can rely on in such cases, at common law, we need not stop to inquire. The following statutory provision shows, at all events, that the motion under consideration was correctly overruled: "No judgment in any Court of record shall be set aside on motion, unless such motion be made during the term at which such judgment was rendered." R. S. p. 735. In the case before us, the judgment was rendered at a previous term to that in which

this motion for a new trial, and, of course, for setting aside the judgment, was made. The above statutory prohibition, therefore, applies to the case.

*Per Curiam.*—The judgment is affirmed with costs.

*G. G. Dunn*, for the plaintiff.

*D. Wallace*, for the state.

(1) See *ante*, p. 435.