BINNS v. THE STATE.

CRIMINAL LAW.—*Evidence.*—*Declarations.*—*Hearsay.*—Declarations which form a part of the *res gestæ*, and are to be regarded as a part of the transaction in question, do not come under the head of hearsay, but are admissible as original evidence.

SAME.—A declaration which is simply narrative of a past event, depending solely, for its effect, upon the credit of the person making it, and not so connected with the transaction in question as to illustrate its character, is inadmissible in evidence.

SAME.—*Murder.*—*Declarations of Deceased.*—On the trial of a defendant indicted for murder, declarations of the deceased, made in the absence of the defendant and after the infliction of the injury, subsequently resulting in death, as to the manner in which, and the means by which, such injury was inflicted, are not admissible as evidence against the defendant.

SAME.—*Motive.*—Where, in such case, the defendant was on trial for the alleged murder of his wife, it is not competent, as tending to establish a motive for the commission of the murder, to introduce in evidence the record of a decree of a court, in an action by the deceased, against the defendant, for a divorce, ordering the latter to pay money into court, restraining him from selling his property, appointing a receiver, etc.

SAME.—*Parol Evidence of Pendency of Suit.*—In such case, as tending to show the state of feeling between the defendant and the deceased, parol evidence of the pendency of such suit may be given.

From the Clinton Circuit Court.

*L. McClurg, J. V. Kent, S. M. Shepherd* and *Gordon, Browne & Lamb,* for appellant.

*J. F. Vail,* Prosecuting Attorney, *C. A. Buskirk,* Attorney General, *N. R. Linsday* and *J. F. Elliott,* for the State.

WORDEN, J.—Indictment for murder, conviction, and sentence of imprisonment in the state-prison for life, a new trial having been refused.

This is the third time the case has been in this court, the judgments on former convictions having been reversed. *Binns* v. *The State,* 38 Ind. 277; S. C., 46 Ind. 311.

Rachel Binns, the wife of the appellant, was the person charged to have been murdered. The evidence tended to show that she was shot and mortally wounded, on the night of January 31st, 1870, in Russiaville, in Howard county, Indiana.

It may be observed that the indictment was returned in Howard, but sent on change of venue to Clinton county for trial.

On the trial, the State called Dr. William H. Hornaday as a witness, and proved by him that he lived in Russiaville in January and February, 1870; that he was acquainted with Mrs. Binns; that he remembered the circumstance of her being shot. In answer to a question as to the first intelligence he received of the occurrence, he said:

"I had gone to bed, about nine in the evening; was lying down in the front room of my house, and heard a scream as though in distress. As soon as I could get on my boots (without my socks), pants, coat and vest, I ran to the house of Mrs. Binns, and found her there shot."

In answer to a question, he said that Mr. Cooper and

Robert Shilling were in the house immediately before him.   He also said that he did not hear the report of the fire-arm.

In answer to a question as to the time which elapsed between the screaming and his arrival at the house, he said:   "Well, I don't know;   I can not say just how long it would take me to run that distance;   not more than a minute and a half or two minutes.   I lived about three hundred yards from the house."

The witness found the deceased standing on the floor in the room when he went in;   she seemed to be considerably distressed and excited;   she was crying, and proceeded to tell those present the occurrence.   The witness was asked to state what she said in regard to her wound, the manner, and her position when she was shot.   To this the defendant objected, on the ground that her statements then made were no part of the *res gestæ;* but the objection was overruled, and he excepted.   The witness proceeded to state as follows:

"Well, she said she was stooping down, putting wood in the stove at the time of the occurrence, and the shot came from the outside through the window, and she was stooping down, fronting the window immediately fronting the stove at the time of the occurrence."

It is a well-established principle of law, that declarations which form a part of the *res gestæ,* and are to be regarded as a part of the transaction, do not come under the head of hearsay, but are admissible as original evidence.   But the application of the principle is sometimes attended with doubt and difficulty.   It was said in the case of *Lund* v. *Inhabitants of Tyngsborough,* 9 Cush. 36, that "If a declaration has its force by itself, as an abstract statement, detached from any particular fact in question, depending for its effect upon the credit of the person making it, it is not admissible in evidence.   Such a declaration would be hearsay.   As where the holder of a check went into a bank, and, when he came out, said

he had demanded its payment; this declaration was held inadmissible to prove a demand, as being no part of the *res gestæ.* This statement was mere narrative, wholly detached from the act of demanding payment, which was the fact to be proved."

It was also said in the same case, that " declarations, to be admissible, must be contemporaneous with the main fact or transaction; but it is impracticable to fix, by any general rule, any exact instant of time, so as to preclude debate and conflict of opinion in regard to this particular point."

Mr. Greenleaf says (1 Greenl. Ev., sec. 108): " The principal points of attention are, whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character." And again, at sec. 110: " It is to be observed, that, where declarations offered in evidence are merely narrative of a past occurrence, they can not be received as proof of the existence of such occurrence."

Turning to a valuable English work, we find it stated, that " In all these cases the principal points of attention are, whether the *circumstances* and *declarations* offered in proof were *so connected with the main fact* under consideration, as to illustrate its character, to further its object, or to form, in conjunction with it, one continuous transaction. It was at one time thought necessary that they should be *contemporaneous* with it; but this doctrine has of late years been rejected, and it seems now to be decided, that, although concurrence of time must always be considered as material evidence to show the connection, it is by no means essential. * * * Still, an act can not be varied, qualified, or explained, either by a declaration which amounts to no more than a mere *narrative of a past occurrence,* or by an *isolated* conversation held,

or an isolated act done, at a later period." 1 Taylor Ev., secs. 525–526.

Now, the statements of Mrs. Binns must have been made some time after the shooting was done, assuming, as we think we may, that it was done before the witness heard her screams. A sufficient time elapsed to enable the witness to put on the clothing mentioned by him, and to go about three hundred yards to the house of the deceased. Her statements, it seems to us, were purely a narrative of what had taken place. She stated her position at the time of the occurrence, and that the shot came from the outside through the window.

This was simply the narrative of a past event, depending solely, for its effect, upon the credit of the party making it, and not so connected with the main fact, the shooting, as to illustrate its character.

We think the weight of authority is against the admissibility of the evidence. In addition to the authorities above cited, we may note the following cases:

In *Scaggs* v. *The State;* 8 Sm. & M. 722, which was a case of murder, the accused was seen by a witness on the day of the murder, with blood on his hands, to which he called the attention of the witness. The accused proposed to prove what he said to the witness when he showed the blood upon his hands, but it was held incompetent.

In *Denton* v. *The State,* 1 Swan, 279, Denton was indicted for the murder of Sullivan, and was convicted of manslaughter. It appeared on the trial that Denton and Sullivan quarrelled, and a blow was struck, when they were separated. Denton then got hold of a chair and threw it at Sullivan, but the witness did not see whether t hit him or not. Sullivan was then pushed out of the house, and, while out, went round the house. In twenty-five or thirty minutes he returned and complained of being sick and was put to bed. The Attorney General asked the witness what Sullivan then said about what made him sick, and whether or not he said that Denton

had hit him. Objection to this question was overruled, and the witness stated that Sullivan said "Denton had hit him in the belly"—"that Denton had bursted him open with the chair." This evidence was held incompetent, and the judgment was reversed.

In the *State* v. *Tilly*, 3 Ire. 424, it was held not competent for a prisoner indicted for murder, to give in evidence his own account of the transaction related immediately after it occurred, though no third person was present when the homicide was committed. In *Bland* v. *The State*, 2 Ind. 608, the case in Iredell was followed, and it was held not competent for the accused to prove a statement made by himself half an hour after the homicide, concerning the circumstances under which it was committed. See, also, *Dukes* v. *The State*, 11 Ind: 557.

We are aware that the cases of *Commonwealth* v. *M'Pike*, 3 Cush. 181, and *Commonwealth* v. *Hackett*, 2 Allen, 136, go far to sustain the admission of the evidence, but we are of opinion, as before stated, that its admission was against the weight of authority.

We can not say that the evidence did not operate to the injury of the defendant.

The State also offered and gave in evidence, over due objection and exception thereto, parts of the record of an action for divorce by the deceased, against the appellant, in the Cass Circuit Court. The complaint in the action was omitted, but the orders of the court for the payment of money by the defendant, restraining the transfer of property, the appointment of a receiver, etc., were given in evidence. On a former trial of the cause, the whole of the record was given in evidence, and this was one of the grounds on which the judgment was reversed. *Binns* v. *The State*, 46 Ind. 311.

We are of opinion that the parts of the record given in evidence were irrelevant and incompetent. The orders of the court in that suit could have had no bearing upon the alleged murder. We do not see how they could legit-

imately have shown a motive for the commission of the murder. It may have been competent to show the state of feeling between the parties, and for this purpose it may have been competent to show that a lawsuit was pending between them. *The State* v. *Zellers*, 2 Halst. 220; *Monroe* v. *The State*, 5 Ga. 85. But the mere fact of the pendency of the suit might have been proved by parol. *Stanley* v. *Sutherland*, 54 Ind. 339–353.

The contents of the record given in evidence could have served no legitimate purpose in the prosecution, but may have injured the defendant, and we think the court erred in admitting them.

There are other grounds urged for a reversal of the judgment, but we pass them over, as the questions may not arise upon another trial of the cause.

The judgment is reversed, and the cause remanded for a new trial. The clerk will give the proper notice.