(February 17, 1885.)

## PEOPLE v. DEWEY.

[6 Pac. 103.]

RES GESTAE—DECLARATIONS OF DECEASED.—Declarations of deceased, made half or three-quarters of an hour after an affray (in which deceased was fatally shot) and after the occurrence had wholly ceased, when all danger was over, the defendant under arrest, and when deceased had been for that length of time among his friends, are inadmissible as part of the *res gestae.*

REASONABLE DOUBT.—A reasonable doubt is not a mere possible doubt, nor is it a captious or imaginary doubt, but is such a doubt as a prudent and reasonable man would be likely to act upon in determining important affairs of life. The above definition of the term, while not perhaps the best that can be given, has been substantially approved by the courts and is not error.

(Syllabus by the court.)

APPEAL from District Court, Owyhee County. Reversed.

Richard Z. Johnson, for Appellant.

The grounds of this appeal are: Error of the court in permitting the witness Williams, over the objections of defendant, to testify to statements of the deceased, highly criminative of defendant, made to the witness from one-half to three-quarters of an hour after the affray was terminated, and in the absence of the defendant and after defendant had been arrested and taken from the scene of the conflict. (See defendant's bill of exceptions, Transcript, page 155.) These statements were admitted in evidence as part of the *res gestae.* The *res gesta* was the affray and that was fully concluded before the statements were made, long before, and they formed no part of it. The statements admitted in evidence were *merely narrative of a past transaction.* (*People v. Ah Lee,* 60 Cal. 85, 86-92; *State v. Daugherty,* 17 Nev. 376, 30 Pac. 1074; *Binns v. State,* 57 Ind. 46, 26 Am. Rep. 48; *Field v. State,* 57 Miss. 474, 34 Am. Rep. 476; *Waldele v. Railway Co.,* 95 N. Y. 274, 47 Am. Rep. 41; *People v. Davis,* 56 N. Y. 96, 102; *Reg. v. Bedingfield,* 14 Cox C. C. 341; S. C., 28 Moak's Eng. 288, 289; 14 Am. Law Rev. 822, 823.) The court erred in giving the fifth instruction of its own motion, when the jury were

told that a *reasonable doubt* "is such a doubt as a person would be likely to act upon in determining important affairs of life." (Transcript, pp. 161, 162, and p. 22.) This instruction required nothing more, at most, than a mere *preponderance* of evidence, for on such preponderance all men daily act "in determining important affairs of life." (*People v. Ah Sing,* 51 Cal. 372.) Here the instruction was: "His own affairs of the *greatest importance." Held, error,* citing *Jane v. Commonwealth,* 2 Met. (Ky.), 30; *State v. Oscar,* 7 Jones (N. C.), 305; *People v. Brannan,* 47 Cal. 96; *State v. Dineen,* 10 Minn. 407; Gilf. ed. 326, 333, 334; *State v. Shettleworth,* 18 Minn. 209, 216; Gilf. ed. 191, 195; 14 Cent. L. J. 447; *Commonwealth v. Webster,* 5 Cush. 319, 320, 52 Am. Dec. 711.

Huston & Gray, for Respondent.

The testimony of the witness Williams as to the statements of deceased in regard to the shooting was properly admitted as a part of the *res gestae.* As to what is properly admitted as evidence under this head, we think an examination of the authorities will show that there is no clear and distinct rule, in admitting or rejecting testimony upon this ground, the court should be governed by the particular circumstances of the case. We would respectfully submit that the true rule is that the court should admit such testimony as will, in its opinion, in view of all the circumstances, tend to the elucidation and establishment of the truth in the case. (1 Bishop's Criminal Practice, secs. 1083-1087; *Commonwealth v. McPike,* 3 Cush. 181, 50 Am. Dec. 727; *Wright v. Dee,* 7 Ad. & E. 313.) The second assignment of error is upon the definition given by the court to what constitutes a reasonable doubt upon this point of alleged error. We would refer to the following authorities: 10 Am. Law Rev. 650 et seq., and cases cited; *May v. People,* 60 Ill. 119.

MORGAN, C. J.—The defendant was indicted and tried at the September term of the Owyhee county district court, for the murder of Joseph Koenig. He was convicted of manslaughter. Defendant moved for a new trial; which motion was denied by the court, and defendant appealed from the

judgment, and from the order denying a new trial, and assigned the following as error, viz.: "1. The court erred in permitting the witness Williams, over the objection of defendant, to testify to statements of the deceased, highly criminative of defendant, made to the witness from one-half to three-quarters of an hour after the affray was terminated, and in the absence of the defendant, and after defendant had been arrested and taken from the scene of the conflict." The following cases are relied upon to support the ruling in the case at bar, to wit: *Insurance Co. v. Mosley*, 8 Wall. 397; *Rex v. Foster*, 6 Car. & P. 325; *Commonwealth v. McPike*, 3 Cush. 181, 50 Am. Dec. 727; *Thompson v. Trevanion*, Skin. 402.

In the case of *Insurance Co. v. Mosley*, 8 Wall. 397, the deceased had fallen downstairs and received a severe hurt upon his head, from the effects of which he afterward died. The question was as to whether his declarations, made immediately after the hurt was received, as to his bodily pains and injuries, were admissible in evidence. The court said that "what the deceased said as to his pains related to present existing facts at the time they were made." We may say, in passing, that declarations of this character are uniformly held to be proper. The declarations as to how he received the injury were made immediately or very soon after the fall. To sustain the admission of the latter declarations the court cites *Thompson v. Trevanion*, Skin. 402. In the latter case the court allowed what the wife said immediately upon the hurt received, and before she had time to contrive or devise anything for her own advantage, to be given in evidence.

In *Rex v. Foster*, 6 Car. & P. 325, the defendant was indicted for killing the deceased by driving a cab over him. The witness heard the deceased groan, and immediately went to him, and asked him what was the matter. Gurney, B., said that what deceased said at the instant as to the cause of the accident was clearly admissible. Park, J., said it was the best possible testimony that, under the circumstances, could be adduced to show what knocked the deceased down.

In the case of *Commonwealth v. McPike*, 3 Cush. 181, 50 Am. Dec. 727, the defendant was charged with killing his wife. It appears that deceased ran upstairs from her own room

in the night, crying "murder" and bleeding. A person who heard her cries went for a watchman, and, on his return, proceeded to the room where she was. He found her upon the floor, bleeding profusely. She said defendant had stabbed her. The declaration was admitted in evidence. The supreme court of Massachusetts held that the evidence was properly admitted, giving as a reason that the declaration was "of the nature of *res gestae,*" and that the time when it was made was so recent after the injury was inflicted as to justify receiving it on that ground.

It will be noticed that in each of these cases the declarations were made by the deceased almost immediately after the injury was received, before the deceased had time to think of or contrive a story, and they were admitted in each case for that reason. We cannot escape the conclusion that there was another reason for the admission of testimony in these cases, although not stated. In each case the defendant and deceased were the only persons present when the injury was inflicted. There was no other eye-witness. The absolute necessity of this testimony to work a conviction of a person believed to be guilty, and the nature of the declarations rendering it almost absolutely certain that the statement was true, must have entered into the consideration. The closing paragraph in the opinion of the court in the case of *Insurance Co. v. Mosley, supra,* indicates this. The court say: "In the ordinary concerns of life no one would doubt the truth of these declarations, or hesitate to regard them, uncontradicted, as conclusive. Their probative force would not be questioned." As to the necessity of bringing them in under the head of *res gestae,* the court say "that what was said could not be received as dying declarations, although the person who made them was dead, and hence could not be called as a witness." The reasoning of the court, in brief, is this: These declarations were a part of the *res gestae.* They were undoubtedly true. They were conclusive. They could not be admitted as dying declarations. The case could not be made out without them. Therefore they were properly admitted. If the first proposition is correct, there is no need of the others; and the last-named four propositions furnish no legal reasons for the admission of the testimony.

In the case at bar, the declarations sworn to by the witness Williams, were made one-half or three-quarters of an hour after the shooting occurred, and the same length of time after the conflict was ended. The deceased had been taken across the street into his own house. Several persons were present, all of them his own friends. Counsel for the people asked witness (Williams) the following questions: "Q. How soon after the shooting was it that you heard him [the deceased] make any statement? A. I could not tell exactly; the time may be half or three-quarters of an hour. Q. Do you know whether King at that time was aware of his condition? A. I cannot tell." Counsel then desired to renew the questions as to what King said as being part of the *res gestae*. To this defendant's counsel objected. Objection was overruled, and defendant by his counsel excepted. The following is the testimony: "Q. Will you state what statements Mr. King made to you in regard to this shooting? A. I asked him which shot struck him, and he told me it was the first shot fired that struck him, just when he was going over the boards in to the brewery. Q. He said that he was struck as he was going over those boards, and that it was the first shot? A. Yes, sir; just as he went over the boards."

To indicate how far these declarations are from the original rule, with reference to matters coming under the head of *"res gestae,"* it is only necessary to refer to the definition of the term, which is, the "transaction; thing done; the subject matter"; as when it is necessary, in the course of a cause, to inquire into the nature of a particular act, or the intention of the person who did the act, proof of what the person said at the time of doing it is admissible evidence as part of the *res gestae,* for the purpose of showing its true character. Greenleaf says that the principal points of attention are whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character. (1 Greenleaf on Evidence, sec. 108.) The general rule is that declarations, to become part of the *res gestae,* must accompany the act which they are supposed to characterize, and so harmonize with them as to constitute one transaction. (*Enos v. Tuttle,* 3 Conn. 250; *State v. Daugherty,* 17 Nev. 376, 30 Pac. 1074.) If the decla-

rations offered in evidence are mere narrative of a past event or occurrence, they are inadmissible. (*Binns v. State,* 57 Ind. 46, 26 Am. Rep. 48; *Denton v. State,* 1 Swan, 279; *State v. Tilly,* 3 Ired. 424.)    In *Bland v. State,* 2 Ind. 608, it was held incompetent for the accused to prove a statement made by himself half an hour after the homicide, concerning the circumstances under which it was committed.

The declarations admitted in evidence in the case at bar were a mere narration of a part of the affray which occurred a half or three-quarters of an hour before, after all danger was over, after the occurrence had entirely ceased, while the defendant was under arrest, and when the deceased had been among his friends during the whole time that had elapsed, and had a tendency to fix the responsibility for the affray upon the defendant.

The learned justice, in the case of *Insurance Co. v. Mosley, supra,* says: "The tendency of recent adjudications is to extend, rather than narrow, the scope of the doctrine of *res gestae.*"    We have failed to discover such tendency, after an examination of all the cases within our reach which discuss the principle.    If it does exist, it indicates a tendency in the courts to leave the field properly occupied by the judiciary and enter that of the law-making power.    This is always a dangerous experiment.    If evidence of this character is proper and necessary, it is the duty of the legislature to direct that it be admitted.    The rules of evidence have been crystallized from the experience and the best thought of centuries.    These rules become clearer, their boundaries better defined, as civilization advances, and as the courts improve in the administration of justice.    It is unsafe for the courts to extend or violate them.    We think the evidence inadmissible, and that it had a tendency to injure the cause of the defendant.

The second error assigned is the definition given to the term "reasonable doubt" in the fifth instruction given by the court. It is as follows: "A reasonable doubt is not a mere possible doubt, nor is it a captious or imaginary doubt, but is such a doubt as a prudent and reasonable man would be likely to act upon in determining important affairs of life." While the court do not say that this is the best definition that could be given, it is substantially the one that has

been approved by the courts in a number of cases. (See *Arnold v. State*, 23 Ind. 170; *State v. Nash*, 7 Iowa, 347; *State v. Ostrander*, 18 Iowa, 435, 458.) The following definition has been given with approval: "A reasonable doubt is one arising from a candid and impartial investigation of all the evidence, and such as, in the graver transactions of life, would cause a reasonable and prudent man to hesitate and pause." (*May v. People*, 60 Ill. 119; *Miller v. People*, 39 Ill. 457.) This definition is no stronger than the one given in the case at bar, as the word "graver" is no stronger than the word "important." The last-named definition is open to the same objection that is urged to the instruction given in this case: it requires such a preponderance of evidence as would convince a reasonable man in the graver transactions of life.

The definition given by Mr. Chief Justice Shaw in the case of *Commonwealth v. Webster*, 5 Cush. 320, 52 Am. Dec. 711, and which the supreme court of California, in the case of *People v. Strong*, 30 Cal. 155, say is probably the best definition ever given to the words "reasonable doubt," is as follows: "The evidence must establish the truth of the fact to a reasonable and moral certainty." The word "moral" in that connection, meaning nothing more than "intellectual" or "mental," is therefore the same as "reasonable." The statement would therefore be: "The evidence must establish the truth of the fact to a reasonable certainty." This is a mere synonym for the term "beyond a reasonable doubt." The learned chief justice goes on to say that it is a certainty that convinces and directs the understanding; satisfies the reason and judgment of those who are bound to act conscientiously upon it. Does not a strong preponderance of evidence convince the understanding, satisfy the reason and the judgment, in many, if not all, the most important affairs of life? The understanding, the reason, and the judgment are substantially synonymous terms in the sense in which they are here used. This discussion simply demonstrates the futility of the efforts to define the term "reasonable doubt." The best efforts in this direction are those which use words most nearly synonymous with the term itself. Perhaps as good a definition as any—possibly the best—would be merely negative in its character, and one

most easily understood by the conscientious juror; such as: It is not a mere imaginary doubt, but must be a doubt which fairly arises from the evidence, and compels the conscientious juror to say, "I am not satisfied from the evidence that the defendant is guilty, or that the fact in question is true." We think that the definition given by the court below, being substantially approved by the courts, was not erroneous.

The third assignment of error is: The court erred in striking out the following words in the tenth instruction asked by defendant, to wit, "and pursue his adversary." It is a familiar principle that all instructions must be adapted to and founded upon the evidence in the case on trial. After a careful examination of the evidence in the transcript, and particularly that referred to by the counsel for the defendant upon which this instruction is based, we are unable to say that there · is any evidence that the defendant pursued the deceased at all. Defendant himself swears "that after the commencement of the affray" he backed up a little after each shot. There appearing to be no evidence of any pursuit by the defendant, the modification was proper.

Judgment reversed, and cause remanded for new trial.

Buck, J., concurred.

Broderick, J., having tried the case in the court below, gave no opinion.