Stephenson v. The State.

Filed April 9, 1887.

---

13,634.

## STEPHENSON v. THE STATE.

CRIMINAL LAW.—*Juror.—Competency.—Discretion of Trial Court.*—The question of the competency of a juror, under his statements, is left, in a measure, to the sound discretion of the trial judge, which will not be reviewed unless the facts show that it was abused.

SAME.—*Scruples Against Affixing Death Penalty.*—A juror who confesses on

Stephenson v. The State.

his *voir dire*, that he has conscientious scruples against affixing the death penalty, in a capital case, and yet asserts his willingness to obey the law, although believing it to be wrong in that respect, is probably incompetent under section 1791, R. S. 1881.

Same.—*Challenge by State.—Supreme Court.—Presumption.*—The Supreme Court will not presume that the defendant's rights were prejudiced by the discharge of a juror, on the challenge of the State, in the absence of any showing on the subject.

Same.—*Homicide.—Self-Defence.—Evidence.—Relative Strength of Parties.— Opinion of Witness.*—In a prosecution for homicide, where it is claimed that the killing was in self-defence, it is proper to show the relative strength of the deceased and defendant, by giving to the jury facts as to the size, muscular development, activity, apparent health, the results of tests of strength, etc., but the opinions of non-expert witnesses upon that question are not competent.

Same.—*Res Gestæ.—Statements Made Subsequent to Encounter.*—Statements of a party to an encounter, concerning the difficulty, made after he has been removed to the office of a physician for surgical attention, and in the absence of the other combatant, are not a part of the occurrence and are not admissible in evidence as a part of the *res gestæ.*

Same.—*Instructions.—Right of Counsel to Read to Jury and Comment Upon.*— Counsel have no right, under the statutes, in a criminal case, to comment upon or read instructions to the jury, and state that they will be given by the court. Section 534, R. S. 1881, conferring such right, has reference exclusively to civil cases.

Same.—*Refusal of Instructions.—Harmless Error.*—The refusal of instructions, the substance of which has been given by the court in other instructions, is not an available error.

Same.—*When Error to Change Jury Orally.*—Where there is a request for written instructions, it is error, under section 1823, R. S. 1881, to charge the jury orally, that "If the State has failed to make out a case against this defendant beyond a reasonable doubt, or if the defendant by his evidence has raised a reasonable doubt, then your verdict will be as follows:" (reading form of verdict for defendant.)

From the Clinton Circuit Court.

*W. R. Moore, J. C. Suit* and *C. S. Wesner,* for appellant. *J. V. Kent* and *W. A. Staley,* for the State.

ZOLLARS, J.—Appellant was charged in the indictment with having committed murder in the first degree.

He was convicted of voluntary manslaughter, and sentenced to the State prison for a term of twelve years.

His counsel argue nine different grounds upon which they claim the judgment should be reversed. These, so far as necessary, we examine in the order of the argument.

1st. Jacob Price, called as a juror, answered upon his *voir dire*, that notwithstanding he had formed and expressed an opinion as to the merits of the case, he could render an impartial verdict upon the law and the evidence. He was further interrogated, and answered as follows:

" Question. Do you feel free to pass upon this question, even though it should inflict the death penalty?

"Answer. Yes, sir, if it is the law.

" Ques. Without regard to the law, do you think it wrong in any case?

"Ans. Yes, sir; I think we should carry out the law, but the law is wrong.

" Ques. Then you have conscientious scruples aside from the law?

"Ans. Yes, sir, I have.

" Ques. Have you conscientious scruples against the infliction of the death penalty?

"Ans. I feel free to carry out the law; but I always, or have for years, felt that the law was not just right.

" Ques. Now, without regard to the law, what is your conscience in the matter?

"Ans. Leaving out the law, I have scruples."

The attorneys for the State challenged Mr. Price for cause, and the court, over appellant's objection and exception, discharged him.

One of the causes for challenge to a person called as a juror, as prescribed by the statute, is, that he has such conscientious opinions as would preclude his affixing the death penalty in a capital case, should the defendant be found guilty. R. S. 1881, section 1791.

The examination of Price did not bring the case strictly within the letter of the above statute, for the reason that he answered, that, notwithstanding his conscientious scruples,

Stephenson *v.* The State.

upon the subject of capital punishment, and his convictions that the law providing for the infliction of such punishment is unjust and wrong, he could yet render a verdict enforcing the law.

It may well be doubted, however, whether the case is not within the spirit of the statute.

The case is different from one where a juror may confess to having formed opinions as to the guilt or innocence of the accused, from newspaper reports or rumors, and yet be able to say that he can render an impartial verdict upon the law and the evidence. In such a case, the evidence, and the charge of the court, may remove all former impressions, by showing that there was no ground at all for them. And so, the case is different from one where a juror may confess to a prejudice against the business in which the defendant may have been engaged, for example, the sale of intoxicating liquors, and yet be able to say that he could give the accused a fair trial upon the evidence. In such a case, an honest and intelligent juror might be able to separate the case and the defendant from the business, and act with impartiality. Here nothing could be expected to occur during the trial, in the natural order of such trials, that could in any way change the conscientious scruples of the juror. He might believe from the evidence, that the defendant was guilty of murder in the first degree as charged, and yet his scruples against capital punishment would remain unchanged. When the charge is murder in the first degree, the statute lodges with the jury a discretion to inflict the death penalty upon conviction, or to imprison the defendant for life in the State prison.

It can hardly be supposed that a juror, who has conscientious scruples against capital punishment, and believes the law authorizing such punishment to be unjust and wrong, could sit with entire freedom and impartiality, and inflict the death penalty in a case where the law authorizes him to punish the offender by a life sentence.

There is nothing in the record from which we can know, or infer, that appellant was injured by the discharge of Price, unless we resort to speculation, and assume that the juror called to fill the place made vacant by his discharge, was objectionable to appellant, and that to get him off the jury, he was compelled to exhaust one of his peremptory challenges, or that he was compelled to leave him on the jury, because his peremptory challenges had been exhausted.

We do not think that in a case like this we should indulge in such assumptions for the purpose of overthrowing the judgment.

Appellant had no right to demand that Price, or any other person, should sit as a juror in the case, unless he was entirely free to act with impartiality, both as to the evidence and the law.

As the record shows nothing to the contrary, this court should presume that the juror called in the place of Price, was impartial and in every way competent. More than this appellant had no right to ask; indeed, for aught that is made to appear by the record, the juror called in the place of Price was in every way satisfactory to appellant.

The case here is different from that of *Brown* v. *State*, '70 Ind. 576, where the record showed that the trial court improperly refused to discharge a juror for cause, and that, in order to protect himself, the defendant was compelled to exhaust one of his peremptory challenges.

The question of the competency of a juror, under his statements, is left, in a measure, to the sound discretion of the trial judge, which will not be reviewed unless the facts show that it was abused. Moore Crim. Law, section 308; *Bradford* v. *State*, 15 Ind. 347; *Fahnestock* v. *State*, 23 Ind. 231 (237); *Elliott* v. *State*, 73 Ind. 10; *Stout* v. *State*, 90 Ind. 1.

Upon the question of the competency of jurors generally, see the late case of *Stoots* v. *State*, 108 Ind. 415.

The record here presents no such error or abuse of discre-

tion in the discharge of Price, as calls for the interposition of this court.

2d. Before proceeding to an examination of the second question discussed by counsel, it should be stated that the mortal wound was inflicted in a combat, and that the claim on the part of appellant is, that he inflicted the wound in self-defence.

Samuel Carson was called as a witness in behalf of appellant. To the following questions he made the following answers:

"Question. How long did you know Thomas Hardesty?

"Answer. Only probably three years; two or three years.

"Ques. Were you with him frequently?

"Ans. About as much as four or five times a year.

"Ques. You may describe him to the jury, as to the general appearance of the man, and what kind of a man he was physically?

"Ans. He was quite good in stature; a good-looking man. I would call him over the average size of men; a man I consider would weigh 185 or 190 pounds.

"Ques. You may state the kind of a man he was physically as to strength, how he was made, and the character of his flesh, if you know?

"Ans. He was a good, strong, robust man; a muscular man.

"Ques. Were you acquainted with the defendant Stephenson?

"Ans. Yes, sir.

"Ques. How long have you been acquainted with him?

"Ans. A year or eighteen months.

"Ques. How often have you seen him in the last year?

"Ans. I have seen him three or four times."

Following the above questions and answers, appellant's counsel propounded to the witness this question: "Were you acquainted with Mr. Stephenson (appellant) and Mr. Hardesty (the deceased) sufficiently to have an opinion as to the rel-

ative strength of each of the parties?" Upon objection by counsel for the State, appellant's counsel announced that they proposed to prove by the witness, in response to the question, that it would be difficult to find a man among a thousand to compare favorably with Hardesty in strength, judging from his appearance in make of limbs, chest and constitution; that he "was as well muscled and as well made" as any man the witness knew; that appellant was the taller man of the two, but very frail in strength; that he has a long, sinewy arm, but no power back of it; that in his (the witness') opinion, Hardesty was by far the abler man in any kind of a contest.

The court sustained the objection to the question, and ruled out the offered testimony. Appellant's counsel contend that it was competent for the witness to give his opinion of the relative strength of the two parties.

It was doubtless competent for appellant to show, in a proper mode, the relative strength of the parties, but we think that it was not competent for the witness to give his opinion upon that question.

It will be observed that the witness had already given the weight of Hardesty, and stated that he was a robust, muscular man. It will be observed, also, that he had been acquainted with appellant but for a year or eighteen months, and had seen him but three or four times during the year preceding the trial.

He did not state that he had ever seen the parties, or either of them, test or exhibit their strength in any contest or otherwise. He was, therefore, illy prepared to form or express an opinion of the relative strength of the parties, if opinions by a non-expert witness upon that subject were competent in any case. There are general statements to be found in the books, to the effect that non-expert witnesses may give their testimony, if they first state the facts, but such general statements are not to be understood as stating the rule to be, that such witnesses may, in all cases, give their opinions after stating the facts. If that were so, the rule allow-

ing opinion testimony would be the general rule, and not one of the exceptions as it is, to the general rule which requires that witnesses shall state facts and not conclusions or opinions.

That non-expert witnesses may give an opinion at all, is the rule of necessity and outside of the general rule. When the case is one in which all the facts can be presented to the jury, then no opinion can be given, because the jury are better qualified than the witness to form conclusions. There are cases where the witness can not put before the jury in an intelligible and comprehensive form the whole ground of his judgment or opinion. In such cases, after, and not until after, the witness has stated all the facts that it is possible to state, he may, from the necessity of the case, give an opinion. When questions as to the condition of the mind and body are the questions in issue, there are often many things in the acts, deportment and appearance of the party, which create a fixed and reliable judgment in the mind of the observer that can not be conveyed in words to the jury. That a person appears to be sick, sane or intoxicated, may well be known by observation, and yet there is no way to describe the appearance except by the words that necessarily embody the conclusion reached by observation. In such and like cases, the rule of necessity allows a witness to give an opinion. See *Evansville, etc., R R. Co.* v. *Fitzpatrick,* 10 Ind. 120; *Loshbaugh* v. *Birdsell,* 90 Ind. 466; *Yost* v. *Conroy,* 92 Ind. 464 (47 Am. R. 156); *Carthage T. P. Co.* v. *Andrews,* 102 Ind. 138 (142) (52 Am. R. 653); *Bennett* v. *Meehan,* 83 Ind. 566 (43 Am. R. 78); *State* v. *Williams,* 67 N. C. 12; Lawson Ex. and Opin. Ev., p. 3, rule 4.

There is nothing in the cases decided by this court, cited by counsel for appellant, in conflict with what we have said above, nor that supports the contention that it was competent for the witness, Carson, to give his opinion of the relative strength of the parties.

In *Jeffersonville R. R. Co.* v. *Lanham*, 27 Ind. 171, the witness was treated as an expert.

In the case of *City of Indianapolis* v. *Huffer*, 30 Ind. 235, the witness really stated a fact.

In the case of *Holten* v. *Board*, etc., 55 Ind. 194, the witness had peculiar qualifications, and testified as to values, and thus the case was within another exception to the general rule.

In the cases of *Leach* v. *Prebster*, 39 Ind. 492, and *State,. ex rel.*, v. *Newlin*, 69 Ind. 108, it was held that non-expert. witnesses may give opinions as to the sanity or insanity of a person, first stating the facts, so far as possible, upon which the opinions are based.

Such evidence is an exception to the general rule, and, so far as any reason has been assigned for its admission, it has generally been made to rest upon the ground of necessity, it being impossible for the witness to describe in words to the jury the particular appearance, acts, gestures, etc., of the person, which contribute to a firm conviction that he is sane or insane.

Section 69 of Wharton's Criminal Evidence, cited by counsel for appellant, contains nothing more than that, in a case of homicide, where the claim is that it was committed in self-defence, it is competent to prove that the deceased "was. armed with enormous bodily strength and desperate rage."

The manner in which such proof is to be made is not there stated, nor is it held in any of the cases cited by the author, that it may be made by the opinions of non-expert witnesses.

At sections 459 and 460, of the same work, also cited by counsel, the author says: "Opinion, so far as it consists of a statement of an effect produced on the mind, becomes primary evidence, and hence admissible whenever a condition of things is such that it can not be reproduced and made palpable in the concrete to the jury. Eminently is this the case with regard to noises and smells; to questions of identification, where a witness is allowed to speak as to his opinion

or belief, and to the question whether a party believed himself at the time to be in great danger of death.  This is also the case as to matters with which the witness is specially acquainted, but which can not be specifically described.  Thus a witness has been permitted to testify that * * * a third person was sick or disabled; that the defendant (or the deceased in cases of homicide) was of fierce temper and great strength."

The general statement of the rule and the reason for it is correctly given by the author.  In support of the statement that the witness may give as his opinion that the deceased was of fierce temper and great strength, but one case is cited, and that is the case of *State* v. *Knapp*, 45 N. H. 148.

It may be, that a witness who was sufficiently acquainted with the deceased may state that he was a person of fierce temper, but, in our judgment, he should not be allowed to give his opinion of the relative strength of the deceased and the defendant.

The case cited by the author does not hold that the strength, or relative strength, of a person may be established by the opinions of witnesses.

The defendant being charged with rape, it was held that his strength to overcome resistance was material.  In proof of that, the witnesses did not give their opinions, but detailed exhibitions of strength on his part, as that on one occasion, as detailed by one witness, he carried a barrel of flour in a certain way, down several stairs or steps, into a cellar; that he had carried a barrel of sugar a certain distance, and seemed to carry them easily ; that on one occasion he had put one or more persons out of his tavern house.

Another witness testified that he had had a contest with the defendant, and was overcome by his strength, stating at the same time the amount that he (the witness) was able to lift ; that he had seen the defendant load wood upon cars, and that he was an active man.

Another witness testified that he had had a scuffle with the

defendant, and was overcome by him, giving at the same time his own weight as 170 pounds, and the amount he was able to lift.

Another witness stated that he had seen the defendant eject a man from a house, in quelling a disturbance, and described the man and the manner in which he was put out.

In speaking of that testimony, the court said : " The testimony of Glazier and others, as to the exhibition of strength by respondent in his encounters with others, we think was admissible. It is true that the strength put forth on those occasions was not capable of exact measurement, as in the case of raising a known weight ; but it might nevertheless afford better means of judging of his capacity of overcoming such resistance as the prosecutrix might have offered, especially, when the size and strength of the persons with whom he struggled were shown. Of course, such testimony would not show respondent's exact strength, but it might tend legitimately to show that he possessed ordinary, or more than ordinary strength ; and the court could not say that to make out either would not be material."

It is thus made apparent from an examination of the case, that the opinions of witnesses as to the strength of the defendant were neither called for nor given, and that the court did not hold, or intimate, that such opinions are competent.

The case of *Cooper* v. *State*, 23 Texas, 331, also cited by counsel for appellant, lends no aid at all to their positions. After announcing the rule that witnesses can give their opinions only in cases where it is impossible to lay the facts before the jury, it was there held, that it was not competent for a witness to give it as his opinion that the fatal shot was fired from a horse or some other elevation.

In speaking of cases where the opinions of witnesses may be received, the court, amongst other things, said : " In all these cases, the opinion of the witness is received, because the facts which constitute the cause, from which the opinion proceeds, as an effect, can not themselves be presented or com-

municated to the mind of a jury, so as to impart to them the knowledge which the witness actually possesses."

And again : " It is, because witnesses have a knowledge of things about which they speak, and have acquired that knowledge in a manner which can not be communicated, or from facts incapable, in their very nature, of being explained to others, that they may state what they know, in the best way they can. This best way is, by giving, in the form of an opinion, that which can not be put in the form of explanation, or narration."

In the case of *Brownell* v. *People*, 38 Mich. 732, cited by counsel, it was said : " The witnesses who were examined, or offered for examination, and whose testimony was excluded as inadmissible, were personally familiar with both parties and capable of forming opinions about their relative strength, tempers, and other personal qualities, not capable of any description except by opinion. We think this testimony should have been received and not struck out. *Hurd* v. *People*, 25 Mich. 405."

The above is the whole of the case, both in the way of statement and decision, as to the competency of opinion evidence, upon the question of strength of the parties.

It will be observed that the questions of the tempers and other qualities of the parties, are grouped with the question of their strength. What the " other qualities " in question may have been is not apparent. It may be that those qualities, as the tempers of the parties, could not be described except by opinion, but we do not think that the same can be said as to the strength of the parties. The case cited gives no support at all to the proposition that a witness may give his opinion of the relative strength of parties in a case of homicide. Such a question was neither made nor decided in that case. All that was there decided is, that in that case, where the defendant claimed to have acted in self-defence, he had a right to show that the deceased was a man of high

temper and quarrelsome disposition. It was not there stated that as to those qualities even, a witness might give his opinion. As to the mode of such proof, nothing was said or decided.

If the Michigan case may be said to amount to a holding that witnesses may give their opinions of the relative strength of the parties in a case like this, the case of *Cook* v. *State*, 4 Zab. (24 N. J. L.) 843 (852), may be set over against it, where, in a case somewhat similar, the Supreme Court of that State said: " It was a mere question of relative strength or mechanical possibility, which an athlete or a mechanic could have answered as well as a physician, and every man upon the jury as well as either."

It is not perceivable to us upon what correct and legal theory the witness, Carson, a non-expert witness in the case before us, could be allowed to give his opinion of the relative strength of the parties. There is no ground upon which such testimony could be admitted, unless it is upon the ground of necessity. But we can think of nothing that could in any way aid the witness in the formation of an opinion upon that subject, that he might not have conveyed to the jury in words. He had already informed the jury that Hardesty was a large, robust and muscular man. If he knew it to be a fact, he might have informed the jury that one of the parties was clumsy, and the other active. If Hardesty seemed to be in more robust health than appellant, he could have stated that to the jury. He could have given the weight and described the build of appellant, who was before the jury. If he had ever seen a test of the strength of the parties in any kind of contest or otherwise, he could have informed the jury of the result. There could have been nothing about the appearance of the parties indicative of strength, that he might not have readily described to the jury. Indeed, the offer by counsel shows that the opinion of the witness, if he had any, was based upon the appearance of Hardesty " in make of limbs and chest," and devel-

opment of muscle, all of which might have been, and in the main had been, described by the witness.

Not to extend the opinion further upon this branch of the case, we are satisfied that the court did not err in rejecting the opinion of the witness as to the relative strength of the parties.

3d. Appellant and Hardesty had a difficulty and fight in a saloon. Appellant inflicted the mortal wound with a knife. His claim below was, and is here, that he was acting in self-defence. After appellant had left the saloon, Hardesty was helped from the saloon to a physician's office, up-stairs and a few doors distant. After he had been taken to the physician's office, Jacob Aughe went there and had a conversation with him.

Appellant called Aughe as a witness, and asked him to give any statements that Hardesty made to him or to others in the office, in reference to the difficulty with appellant.

In response to an inquiry by the court, counsel for appellant answered that they did not offer the statements as dying declarations. They then made the following offer:

"We offer to prove by this witness, in response to this question, that immediately after the occurrence and before anything had been done toward dressing the wound, he went to the doctor's office, and that he assisted in taking off his clothes and helped to dress the wound; that when he first went up he said to Hardesty, 'How do you do, Tom.' He said, 'How do you do, Jake.' That he then said, 'Are you hurt bad?' Hardesty said, 'I am not.' Witness then said to him, 'Do you feel bad?' Hardesty said, 'No, only I would like to go down and lick him yet. They did me a wrong there. If they had let me alone, I would have killed him.' That the doctor said to him he was afraid it was fatal; that at the same time he, witness, heard a party ask him what started the trouble, and Hardesty said, 'It didn't make any difference about that, at all, what started the trouble,' and refused to tell what started it. And they

asked him if Stephenson hit him first, and he said, ' He didn't.' He said, ' I knocked him down first.' "

These statements were not offered as dying declarations, and could not have been admitted as such if they had been so offered, for the reason that Hardesty, at the time, had no apprehension of death. The offered evidence was, therefore, mere hearsay, and not admissible unless Hardesty's statements were a part of the res gestœ, and admissible as original evidence. Just how much time elapsed between the cutting and the end of the fight, and the call of Aughe at the physician's office, is not definitely stated by any of the witnesses.

After appellant had left the saloon, some little time was spent in examining the extent of the cuts, and in persuading Hardesty that he ought to go, or be taken, to a physician. To the time thus consumed should be added, at least, the time necessary to get Hardesty from the saloon to the physician's office. The time is not always so essential, but in order to make such declarations competent, they must be a part of the res gestœ, and will not be admitted if they consist simply of narrations or statements of a past occurrence or transaction.

The declarations of Hardesty to Aughe were subsequent to the occurrence to which they related, subsequent to a conversation between Hardesty and others in the saloon after the occurrence and the departure of appellant, and were made in the absence of appellant. Under our cases, and the weight of authority elsewhere, they were not competent, because not so connected with as to be in any way a part of the occurrence. Binns v. State, 57 Ind. 46 (26 Am. R. 48) ; Bland v. State, 2 Ind. 608 ; Wheeler v. State, 14 Ind. 573 ; Dukes v. State, 11 Ind. 557 ; Cheek v. State, 35 Ind. 492 ; Jones v. State, 71 Ind. 66 ; Doles v. State, 97 Ind. 555 ; Montgomery v. State, 80 Ind. 338 (344) (41 Am. R. 815) ; Wharton Crim. Ev., sections 262 to 266, inclusive ; People v. Ah Lee, 60 Cal. 85.

The case last cited is very similar to the case before us. In

that case it was held, after a full discussion and examination of the authorities, that the declarations of the wounded man, made on his way to and in a store-room, to which he ran immediately after receiving the wound, and after the assailant had fled, were not a part of the *res gestæ*, and hence not competent evidence.

4th. Appellant submitted instructions to the court below, and asked that they might be given to the jury.

The court noted on the margin of three of them " given." As a part of the closing argument for appellant, one of his counsel read said instructions to the jury, commented upon them, and informed the jury that they would be given by the court. When the court came to charge the jury, it refused to give the instructions so asked, marked and read to the jury by appellant's counsel. Appellant claims, first, that he was thus misled by the court, and his case prejudiced, by his counsel being placed in such a false position before the jury, as tended to destroy their confidence in them, and in what they advanced in argument.

Aside from anything that the court may have induced appellant or his counsel to do, they had no right, under the statutes, to comment upon, or read instructions to the jury, and inform them that they would be given by the court.

Section 534, of the civil code, R. S. 1881, provides that, " upon the trial of any civil cause before a jury," either party may submit written instructions and require the court to indicate, before argument, such as will be given or refused, and may read to the jury, and comment upon in argument, such as the court, in the mode prescribed, may have designated as those to be given. That section, as its terms clearly show, has reference exclusively to civil causes. It has no reference whatever to criminal causes.

Section 1823, of the criminal code, prescribes the order of trial in criminal causes, and the manner of asking and giving instructions to the jury.

The record shows affirmatively that neither appellant nor his counsel were misled by the court.

It is stated in the bill of exceptions, " that when defendant's counsel requested the court to give the aforesaid instructions, and after they had been marked 'given,' the court informed the counsel for defendant, in the presence of opposing counsel, in substance, that the instructions would be further considered, and all instructions considered proper would be given, and the others refused. The defendant's counsel did not claim the right to use the instructions before the jury."

It is thus made apparent, that if counsel for appellant got themselves in an awkward position before the jury, it was their fault, and not the fault of the court.

We have examined the instructions refused. The latter portion of the third, at least, is not applicable to the evidence. Perhaps, the whole instructions might properly have been refused for that reason. But conceding that, with the exception stated, each one of them was applicable to the evidence, and was correct as an abstract proposition of law, it does not follow that the judgment ought to be reversed on account of their refusal.

It is well settled that the refusal of instructions, the substance of which has been given by the court in other instructions, is not an available error. *Conradt* v. *Clauve*, 93 Ind. 476; *Indiana Manf'g Co.* v. *Millican*, 87 Ind. 87; *Barnett* v. *State*, 100 Ind. 171; *Freeze* v. *DePuy*, 57 Ind. 188; *Starret* v. *Burkhalter*, 86 Ind. 439; *Coryell* v. *Stone*, 62 Ind. 307; *City of Indianapolis* v. *Murphy*, 91 Ind. 382; *Bowen* v. *Pollard*, 71 Ind. 177; *National Benefit Ass'n, etc.,* v. *Grauman*, 107 Ind. 288; *McDermott* v. *State*, 89 Ind. 187 (196); *Everson* v. *Seller*, 105 Ind. 266.

The court gave a number of instructions on its own motion, and quite a number asked by appellant. The jury were thus very fully instructed.

The substance of the charges refused was given by the court in the other instructions.

The instructions refused were upon the question of self-defence. It would not be profitable to set out in full, nor to give an abstract of the instructions refused and given, upon that branch of the case. We have examined them all with care, and are well satisfied that so far as concerns the instructions upon the question of self-defence, appellant had a fair and impartial trial. Upon that feature of the case, the instructions were quite as favorable as appellant could reasonably ask.

5th. It is stated in the bill of exceptions, that before the commencement of the argument, the court having plenty of time to prepare instructions, appellant by his attorneys, by a written request, asked that all instructions to the jury should be in writing, and that notwithstanding that request, the court gave the jury, over the objection and exception of the defendant, the following verbal instruction: " Gentlemen of the jury, if the State has failed to make out a case against this defendant beyond a reasonable doubt, or if the defendant by his evidence has raised a reasonable doubt, then your verdict will be as follows: (reading form of verdict for defendant)." The foregoing can not be said to be simply a direction to the jury as to the form of their verdict. It was very clearly a charge as to the law. It amounted to an instruction that unless the case was made out against him beyond a reasonable doubt, the verdict should be for the defendant. Here was a clear violation of section 1823 of the statutes. To hold that it was an error that may be disregarded, would be to overthrow a line of decisions from which this court, in the case of *Smurr* v. *State*, 88 Ind. 504, refused to depart, extending from the case of *Townsend* v. *Doe*, 8 Blackf. 328, decided in 1846, to the last reported case, of *Bradway* v. *Waddell*, 95 Ind. 170, decided in 1884. The violation of the statute is much more flagrant here than in many of the reported cases.

Many of the cases decided by this and other courts are cited in the case of *Bradway* v. *Waddell*, *supra*. We need

not re-cite them. Nor need we extend this opinion to re-state the grounds upon which the former rulings are based. On account of this error the judgment must be reversed.

Other questions are discussed by counsel, but as they may not arise upon the next trial, they need not be decided.

Judgment reversed, with instructions to the court below to sustain appellant's motion for a new trial.

The clerk will make the proper order for the return of appellant.

Filed April 19, 1887.