Argued 15 January; decided 27 January, 1902.

## STATE *v.* COLESTOCK.

[67 Pac. 418.]

RAPE—RESISTANCE OF PROSECUTRIX.

1. It is not necessary that the person assaulted should have resisted to the uttermost of her ability to support a charge of rape—it is enough if the act was accomplished by force, without consent, and against a genuine resistance.

PRESUMPTION—PART OF EVIDENCE IN BILL OF EXCEPTIONS.

2. Where the bill of exceptions does not contain all the evidence on a certain point it will be presumed that there was sufficient received on that subject to support the verdict: *State* v. *Gardner,* 33 Or. 150, cited.

From Washington:    THOS. A. MCBRIDE, Judge.

Ezra Colestock, feeling he has not received justice by a sentence of twelve years in the penitentiary, appeals from a conviction of rape.    AFFIRMED.

For appellant there was a brief and an oral argument by *Messrs. Geo. R. Bagley* and *Schuyler C. Spencer.*

For the state there was a brief over the names of *Harrison Allen,* District Attorney, and *E. B. Tongue,* with an oral argument by *Mr. D. R. N. Blackburn,* Attorney-General, and *Mr. Allen.*

MR. JUSTICE MOORE delivered the opinion.

The defendant, Ezra E. Colestock, was convicted of the crime of rape, alleged to have been committed by forcibly ravishing a female named Mary E. Thompson; and, having been sentenced to imprisonment in the penitentiary for the term of twelve years, he appeals, assigning as error the action of the trial court in refusing to charge the jury as requested, and in

giving an instruction of which he complains. To render the alleged error intelligible, it is deemed necessary to detail the facts disclosed by the transcript. The bill of exceptions does not purport to contain all the evidence given at the trial, but states, in effect, that the state introduced testimony tending to show that on March 6, 1900, between 8 and 9 o'clock P. M., the prosecuting witness, who was nineteen years old, voluntarily accompanied the defendant from the business section of Hillsboro, along the public streets, to the residence part of that city, where, within one block from an occupied dwelling, and two blocks from her father's home, she was forcibly ravished by the defendant; that when the assault was being made upon her she gave an outcry, which was heard by a witness who was within 25 feet from the scene, but that no other person heard her; that after the commission of the offense she returned with the defendant to the business part of said city, and on the same evening, after separating from him, made statements incriminating him, and on the next day lodged a complaint against him, and that she became sick in consequence of such intercourse; that the defendant, to rebut the evidence of rape, introduced testimony tending to show that the prosecutrix voluntarily accompanied him to the place described by her, where, after sitting in his lap about fifteen minutes, he had intercourse with her with her consent; that they thereupon returned to the business part of the city, where they separated; that as they were returning, and within ten minutes after the commission of the offense, they met her brother, to whom she made no complaint, though she told him thereof the next evening; that the next day after the intercourse she denied to a witness that she had been ravished; and that the defendant was not arrested for the commission of the alleged crime until January 5, 1901.

The instruction which the court refused to give at defendant's request is as follows: "You are further instructed, gentlemen of the jury, that, before you can find the defendant guilty as charged in this case, you must be satisfied from the evidence, beyond a reasonable doubt, that the prosecutrix re-

sisted the defendant to the full extent of her ability and strength from the time the defendant commenced the attempt to have intercourse with her till said act was accomplished, and that she at no time consented thereto during said time; and, if she upon that occasion at any time consented to have intercourse with said defendant, he would not be guilty of the crime of rape, and your verdict should be, 'Not Guilty.' '' The instruction complained of is as follows: ''Before you can convict the defendant of rape in this case, you must find that he, before the time of the indictment, had carnal knowledge of her, and did it by force, she at no time consenting to the act of intercourse; and, if she at any time consented to the intercourse, he would not be guilty of rape. There must be honest, actual, *bona fide* resistance. She must have used force to prevent him, the best she could. It must have been by force and against her will, and at no time consented to. So, if it was begun by force, and she actually consented before the act was completed, it would not be rape. The state must show beyond a reasonable doubt, before they can convict, that the act was committed by force and against the will of the prosecutrix, if committed at all.'' Exceptions having been reserved to the court's action in this respects, it is contended by defendant's counsel that error was committed in refusing to charge the jury as requested, and in giving the instruction complained of.

1. Considering these alleged errors in the order of their assignment, defendant's counsel, in support of the point for which they contend, rely upon the case of *People* v. *Dohring,* 59 N. Y. 374 (17 Am. Dec. 349), in which it was held that the court erred in the trial of an indictment for forcibly ravishing a woman, in refusing, when so requested, to charge the jury that, before the defendant could be convicted of rape, they must be satisfied from the evidence that she resisted him to the extent of her ability on the occasion. They also cite *People* v. *Morrison,* 1 Parker, Cr. R. 625, in which it was held that, to warrant a conviction for rape, it ought to appear that there was the utmost reluctance and the utmost resistance on the part of the female, in speaking of whom Mr. Justice

HARRIS says: ''The prosecutrix, if she was the weaker party, was bound to resist to the utmost. Nature had given her feet and hands with which she could kick and strike, teeth to bite, and a voice to cry out. All these should have been put in requisition in defense of her chastity.''

We cannot give our consent to such a harsh doctrine, and think the better rule, and the reason upon which it is founded, are announced in *State* v. *Shields*, 45 Conn. 256. Mr. Chief Justice PARK, speaking for the court in deciding that case, says: ''The defendant requested the court to charge the jury that, to constitute the crime of rape, it was necessary that the prosecutrix should have manifested the utmost reluctance, and should have made the utmost resistance. The court did not comply with this request, and the refusal to do so is made a ground for asking a new trial. While it may be expected in such cases, from the nature of the crime, that the utmost reluctance would be manifested, and the utmost resistance made which the circumstances of a particular case would allow, still, to hold, as matter of law, that such manifestation and resistance are essential to the existence of the crime, so that the crime could not be committed if they were wanting, would be going farther than any well-considered case in criminal law has hitherto gone. Such manifestation and resistance may have been prevented by terror caused by threats of instant death, or by the exhibition of brutal force which made resistance utterly useless; and other causes may have prevented such extreme opposition and resistance as the request makes essential. This importance or resistance is simply to show two elements in the crime,—carnal knowledge by force by one of the parties, and nonconsent thereto by the other. These are essential elements, and the jury must be fully satisfied of their existence in every case by the resistance of the complainant, if she had the use of her faculties and physical powers at the time, and was not prevented by terror or the exhibition of brutal force. So far resistance by the complainant is important and necessary; but to make the crime hinge on the uttermost exertion the woman was physically capable of making,

would be a reproach to the law as well as to common sense. Such a test it would be exceedingly difficult, if not impossible, to apply in a given case. ᐧ A complainant may have exerted herself to the uttermost limit of her strength, and may have continued to do so till the crime was consummated. Still, a jury, sitting coolly in deliberation upon the transaction, could not possibly determine whether or not the limit of her strength had been reached. They could never ascertain to any great degree of certainty what effect the excitement and terror may have had upon her physical system. Such excitement takes away the strength of one, and multiplies the strength of another. The request, in substance, is as follows, that inasmuch as nonconsent is to be proved by the resistance made, therefore, if the resistance falls short of the extremist limit that could have been made, the deficiency necessarily shows consent, and should be so charged as matter of law. The fallacy lies in the assumption that the deficiency in such cases necessarily shows consent. If the failure to make extreme resistance was intentional, in order that the assailant might accomplish his purpose, it would show consent; but, without such intent, it shows nothing important whatsoever. The whole question is one of fact, and the court committed no error in so leaving it to the jury.''

It is contended that the instruction given by the court of its own motion does not properly state the law in reference to the measure of resistance necessary on the part of the prosecutrix in a case of this character, and that the transcript shows that, if she had made any opposition to his advances, she could have secured help from the persons living in the houses near which the offense was committed. As the bill of exceptions does not purport to contain all the testimony given at the trial, it is impossible to state what force may have been used or threats made by the defendant to accomplish his purpose. While it appears that she voluntarily accompanied him from the business section to the residence part of the city, it will be remembered that she was going in the direction of her home. Her outcry when assaulted was heard by a witness who was within

25 feet from the place where the outrage was committed, but it cannot be ascertained from the bill of exceptions why he did not go to her relief, unless it may be inferred from the verdict that her cry for help was suppressed by her assailant, so that in the darkness the attention of the witness was not particularly attracted by her indistinct entreaty for deliverance; and, if she were by such means unable to summon aid when so near, how could it be expected that she would be heard by the residents of the houses a block or more away? After the offense had been committed, she went with the defendant to the business section of the city, in going to which she met her brother, to whom she made no complaint; but the transcript fails to show the age or manly vigor of her relative, or what threats may have superinduced her return, or prevented her from telling her brother at that time of her shame, and of the author of her dishonor.

2. What has been here said is not intended as a review of the evidence, which has not been brought up, but to show that, in the absence of all testimony in respect to threats and the degree of force used, it will be presumed that the verdict was supported by evidence, and that the judgment is according to law: *State* v. *Gardner,* 33 Or. 150 (54 Pac. 809); *State* v. *Tucker,* 36 Or. 291, 306 (61 Pac. 894, 51 L. R. A. 246).

The instruction given by the court is certainly as liberal as the defendant was entitled to expect, and hence the judgment is affirmed.                                        AFFIRMED.