(July 6, 1907.)

STATE, Respondent, v. FRANK NEIL, Appellant.

[90 Pac. 860.]

ASSAULT WITH INTENT TO COMMIT RAPE—SUFFICIENCY OF INFORMA-
TION—FELONIOUS INTENT—INTENT TO USE FORCE—EVIDENCE OF
COMPLAINT BY PROSECUTRIX—INSTRUCTIONS—PUNISHMENT.

1. An information charging the crime of assault with intent to commit rape, which alleges that the defendant did assault the prosecutrix with intent to have sexual intercourse with her "willfully, feloniously, violently, unlawfully and against her will, wish, consent and resistance," sufficiently alleges the intent to accomplish the felonious act by force and violence.

2. When the charge is assault with intent to commit rape, the intent of the defendant at the time of the assault must be judged of and determined by his acts, conduct and declarations at the time of the commission of the alleged offense, and the question of the intent with which the assault was made is one of fact to be determined by the jury.

3. In order to warrant a conviction of the crime of assault with intent to commit rape, the state must prove beyond a reasonable doubt that the defendant made an assault upon the prosecutrix

with intent to use such force as might be necessary in order to have carnal knowledge of her, against her will and without her consent.

4. Evidence of complaint made by the prosecutrix to third parties soon after assault, considered, and held proper and admissible.

5. All the instructions given in a case should be read and considered together as a whole, and if when so considered they fairly present to the jury the law of the case, the judgment will not be reversed on account of some specific portion of the instructions, when taken alone, being incomplete or obscure.

6. An instruction which tells the jury that if after considering all the evidence they "have a reasonable and abiding doubt of defendant's guilt," they should acquit him, is not so prejudicial as to warrant a reversal of the judgment. The word "abiding," however, should not be inserted in such an instruction.

7. Sentences in criminal cases should be imposed in keeping with the spirit of our law, which has for the object of its penal sentences the protection of society and reformation of the criminal.

(Syllabus by the court.)

APPEAL from District Court of Fifth Judicial District, for Bear Lake County. Hon. Alfred Budge, Judge.

Appellant was convicted of the crime of assault with intent to commit rape, and sentenced to serve a term of ten years in the state penitentiary. He appealed from the judgment and order denying his motion for a new trial. *Judgment modified,* and as modified affirmed.

Bartch & Bagley, for Appellant.

The prosecutrix is required to resist to the utmost from the beginning to the end, and this must be positive resistance; no equivocal opposition will be permitted. (*De Voy v. State.* 122 Wis. 148, 99 N. W. 455; *Posey v. State,* 143 Ala. 54, 38 South. 1019; *Connors v. State,* 47 Wis. 523, 2 N. W. 1143; *Matthews v. State,* 19 Neb. 330, 27 N. W. 234; *Brown v. Commonwealth,* 102 Ky. 227, 43 S. W. 214; *Perez v. State* (Tex. Cr. App.), 87 S. W. 351; *People v. Kirwan,* 22 N. Y. Supp. 160; *Hollister v. State,* 156 Ind. 255, 59 N. E. 847; *Toulet v. State,* 100 Ala. 72, 14 South. 403; *Jones v. State,* 90 Ala. 628, 24 Am. St. Rep. 850, 8 South. 383.)

"It must appear that she showed the utmost reluctance and used the utmost resistance." (*Don Moran v. People,* 25 Mich. 356, 12 Am. Rep. 283; *Vaughn v. State* (Neb.), 110 N. W. 992; *Reg. v. Hallett,* 38 Eng. Com. L. 318; *State v. Colestock,* 41 Or. 9, 67 Pac. 418, 419.)

The crime of assault with intent to rape includes every ingredient of the crime of rape, except the element of penetration. (23 Ency. of Law, 2d ed., 864.)

The intent to have sexual intercourse with the prosecutrix at all hazards and despite any resistance she might make is the gist—the gravamen—of the offense, and if lacking, a conviction cannot be upheld. (*Shell v. State* (Tex. Cr. App.), 38 S. W. 207; *Gaskin v. State,* 105 Ga. 631, 31 S. E. 740; *Clark & Farmer v. State,* 39 Tex. Cr. Rep. 152, 45 S. W. 696-701; *Hunter v. State,* 29 Fla. 486, 10 South. 730; *Krum v. State,* 19 Neb. 728, 28 N. W. 278; *State v. Canada,* 68 Iowa, 397, 27 N. W. 288; *Dunn v. State,* 58 Neb. 807, 79 N. W. 719; *People v. Fleming,* 94 Cal. 308, 29 Pac. 647; *People v. Brown,* 47 Cal. 447; *Adams v. People,* 179 Ill. 633, 54 N. E. 296; *Brown v. Commonwealth,* 102 Ky. 227, 43 S. W. 214; *McGee v. State,* 21 Tex. App. 670, 2 S. W. 890; *State v. Truitt* (Del.), 62 Atl. 790; *Franey v. People,* 210 Ill. 206, 71 N. E. 443; *Kearse v. State* (Tex. Cr. App.), 88 S. W. 363; *Sutton v. State,* 123 Ga. 125, 51 S. E. 316; *Suggs v. State,* 46 Tex. Cr. App. 151, 79 S. W. 307; *Dina v. State,* 46 Tex. Cr. App. 402, 78 N. W. 229, and cases; *Ross v. State* (Tex.), 78 S. W. 514; *Ashford v. State,* 81 Miss. 414, 33 South. 174; *State v. Hamey* (Mo.), 65 S. W. 946, and cases.)

"The intent with which the assault is committed must be the specific intent to rape." (23 Ency. of Law, 2d ed., 865.)

In order to convict the defendant of the charge of assault with intent to commit rape, "it must appear from the evidence beyond a reasonable doubt that the accused intended, if it became necessary, to force compliance with his desires at all events and regardless of any resistance made by his victim." (*McCullough v. State* (Tex.), 47 S. W. 990; *Adams v. People,* 179 Ill. 633, 54 N. E. 296; *Brown v. Commonwealth,* 102 Ky. 227, 43 S. W. 214; *Tyler v. State,* 46 **Tex.**

Cr. App. 10, 79 S. W. 558; *Coffee v. State* (Tex. Cr.), 76 S. W. 761; *Dockery v. State,* 35 Tex. Cr. Rep. 487, 34 S. W. 281, and cases.)

In *Anderson v. State,* 82 Miss. 784, 35 South. 202, an instruction more accurately stating the law than did this No. 2 was given, and yet the case was reversed on this ground alone. The vice of this instruction was that it authorized a verdict of guilty if defendant intended to have sexual intercourse with the prosecutrix, and ignored the element of force and resistance or nonresistance entirely. This alone was reversible error. (*Adams v. People,* 179 Ill. 633, 54 N. E. 296; *Mills v. United States,* 164 U. S. 644, 41 L. ed. 584, 17 Sup. Ct. Rep. 210; *People v. Dohring,* 59 N. Y. 374, 17 Am. Rep. 349.)

Instruction No. 17, on circumstantial evidence, was good law in the abstract, but there was no circumstantial evidence in the case. Instructions not based upon evidence in the case are erroneous. (*Gwinn v. Gwinn,* 5 Idaho, 271, 48 Pac. 295; *Wortman v. People,* 25 Colo. 270, 53 Pac. 1053; *Johnson v. People,* 197 Ill. 48, 64 N. E. 286.)

Instruction No. 8 was erroneous in that the quality of the doubt was too strongly stated. It was stated that they must have an "abiding doubt." This is erroneous. (*State v. Anthony,* 6 Idaho, 383, 55 Pac. 884.)

An erroneous instruction is not cured by a correct one subsequently given on the same subject, unless the latter specifically withdraws the erroneous one. (*Holt v. Spokane & P. Ry. Co.,* 3 Idaho, 703, 35 Pac. 39; *People v. Wong Ah Ngow,* 54 Cal. 154, 35 Am. Rep. 69; 11 Ency. of Pl. & Pr. 145, 146; *State v. Fowler,* 13 Idaho, 317, 89 Pac. 757.)

It has been held that an indictment which does not say that *the act was done against the will of the prosecutrix,* notwithstanding it alleges that it was forcibly done, is insufficient. (*State v. Marsh,* 132 N. C. 1000, 43 S. E. 828, 67 L. R. A. 179.)

J. J. Guheen, Attorney General, Edwin Snow, B. S. Crow and J. H. Peterson, for Respondent.

A verdict of guilty on the charge will not be disturbed where the evidence shows an assault and the question of intent is fairly submitted to the jury, even though the evidence bearing upon the intent may be slight. (*State v. Beard,* 6 Idaho, 614, 57 Pac. 867; 1 McClain, Crim. Law, sec. 463, and cases.)

The entire charge on a particular point must be considered to determine whether it is misleading. (*People v. Bernard,* 2 Idaho, 193, 10 Pac. 30; *State v. Wetter,* 11 Idaho, 433, 83 Pac. 341.)

The instructions are to be considered as a whole, and an erroneous instruction which did not mislead the jury is not ground for reversal. (*State v. Wetter,* 11 Idaho, 433, 83 Pac. 341; *State v. Bond,* 12 Idaho, 424, 86 Pac. 43; *State v. Rice,* 7 Idaho, 762, 66 Pac. 87.)

Conceding that some of the defendant's instructions were correct, it was not error to refuse to give them if instructions of the court cover the issues involved and state the principles applicable. (*State v. Rathbone,* 8 Idaho, 161, 67 Pac. 186; *State v. Lyons,* 7 Idaho, 530, 64 Pac. 236; *State v. Rooke,* 10 Idaho, 388, 79 Pac. 82; *State v. Roland,* 11 Idaho, 490, 83 Pac. 337.)

The instruction in regard to reasonable doubt, assigned as error, is an instruction which in substance has been passed upon by this court in numerous cases. (*People v. Dewey,* 2 Idaho, 83, 6 Pac. 103; *State v. Levy,* 9 Idaho, 483, 75 Pac. 227; *State v. Kruger,* 7 Idaho, 178, 61 Pac. 463; *State v. Steers,* 12 Idaho, 174, 85 Pac. 104.)

The sufficiency of the information, in practically the identical form of the one in the present case, has been previously passed upon by this court. (*State v. Beard,* 6 Idaho, 614, 57 Pac. 867.)

AILSHIE, C. J.—Appellant was convicted of the crime of assault with intent to commit rape, and was sentenced to serve a term of ten years in the state penitentiary. He has

appealed from the judgment and an order denying his motion for a new trial.

The assignments of error will be considered under four general divisions: 1. The order overruling defendant's demurrer to the information; 2. The sufficiency or insufficiency of the evidence to support the verdict and judgment; 3. Errors alleged as having been committed in the admission and rejection of evidence offered; 4. The instructions given to the jury, and refusal to give certain instructions requested by the defendant.

The demurrer to the information was urged on the grounds that it was not charged that the assault had been made with intent to overcome the resistance of the female by means of *force or fear.* The charging part of the information is as follows:

"The said Frank Neil, on the 24th day of July, 1906, at the County of Bear Lake and State of Idaho, and prior to the filing of this information, in and upon one Annie Fuchs, a female, not the wife of said Frank Neil, an assault did make, and her the said Annie Fuchs did then and there violently seize, throw upon the ground, struggle with and illtreat, with intent her, the said Annie Fuchs, willfully, feloniously, violently, unlawfully and against her will, wish, consent and resistance of her, the said Annie Fuchs, to ravish, carnally know, and with her to have actual sexual intercourse."

From reading the foregoing it will be noted that the information charges the defendant with intent to have sexual intercourse with the prosecutrix, "willfully, feloniously, violently, unlawfully, and *against her will, wish, consent and resistance."* This is an undoubted compliance with the provisions of our statutes defining the requisites of indictments and information. (Rev. Stats., secs. 7677-7679, 7686; Sess. Laws 1899, p. 126.) The case of *People v. Marsh,* 132 N. C. 1000, 43 S. E. 828, 67 L. R. A. 179, cited and relied upon by appellant, is not in point in this case.

We have examined the evidence very carefully, with a view of ascertaining its sufficiency to support the verdict, and

have concluded that there was enough competent evidence before the jury to justify them in returning a verdict against the defendant. Indeed, the defendant's own story was in many respects strongly corroborative of the prosecutrix's statement of the occurrence.

The appellant met the prosecutrix, Annie Fuchs, on July 24, 1906, at Glencoe, a lake resort in Bear Lake county, where the German people of that community were having a picnic. Appellant was engaged as a traveling salesman for a whole-sale grocery firm of Chicago. He had met the prosecutrix at least once before, at a place where he sold a bill of goods. He spent part of the time during the day of this picnic in boat-riding with this girl. A dance was given that night which they all attended, and he danced several times with her. Along toward midnight the lady with whom Miss Fuchs was to spend the night got ready to go home, and while the two were discussing the matter as to whether the girl should go then or wait till later, Neil suggested that he would take her home later. After some discussion it was agreed that he should take her home when she got ready to go, and about an hour or such a matter thereafter they started. He had a team and buggy at the barn, and she says he told her that they were already hitched up (this he denies), but when they got out there she found that they were not hitched to the buggy, and he made some remark about disliking to hitch up the team, whereupon she suggested that they walk. To this he readily agreed, and they started, the distance they were to go being somewhere between half a mile and a mile. As they started out it seems that they "locked arms" and walked along "sociable like," and pretty soon the defendant stopped and put both arms around her and "hugged" her, at which she told him to "quit that," and if he could not take her home "decent" she would go alone. He there-upon desisted from further pressing his amorous demon-strations, and they walked along for some distance without either saying anything, and he again put his arm around her and threw her to the ground and fell upon her. A scuffle ensued, in which she says she screamed and pulled his

hair and threatened him with the penitentiary, and finally, when these things failed, she determined to disable him from further perpetration of his crime or of future like offenses, and was proceeding to execute her intentions when a team came along. The defendant then got up, and the girl called to them to let her ride. The team stopped and they took her in, and the defendant, remarking that there was no use of him going farther, bade her good-night and walked back.

The prosecutrix made complaint to the occupants of the hack of having been illy used, and when she got to the place where she was to stop she was crying, her hair was disheveled, her waist was pulled out about the belt and her clothing was otherwise disarranged. She made complaint to the lady there, and shortly thereafter the defendant was arrested. He admits "hugging" the prosecutrix—says that he did so several times, and that while she told him not to do so, he thought she liked it, and that she really meant it was all right. He admits that he tried to have intercourse with her; but says he had no intention of doing so by force or violence; that he thought from her conduct that she was a woman who would do that kind of thing, and that he was that sort of a fellow. He insists, however, that she made practically no resistance or protest until the very last, and that he had taken such protest as she did make more as an invitation than as dissent. He denies the use of force, or any intention to resort to force or violence. He was, according to his story, rather seeking to inflame her passions and accomplish his purpose through her passive consent. He denies throwing her on the ground, and says he does not know how she got down.

It is needless to recite the evidence in detail, because the prosecutrix was corroborated in practically the whole of her testimony, either by the admissions of the defendant, physical facts, or the testimony of other witnesses. Her wrists were red and showed rough handling; his face was scratched. This latter fact was denied by several witnesses, but was proven positively by one witness. He also stated to one witness that "she scratched his face and fought like the devil."

Every fact necessary to a conviction is admitted, except the use of force or violence and the intent to consummate the act by such means.

When the charge is assault with intent to commit the crime of rape, the intent must be judged and determined by the conduct of the party committing the assault. Here there can be no doubt but that the defendant committed both an assault and battery on the prosecutrix, not in locking arms and walking along "sociable like" with her, but in seizing her person and grappling with her and taking indecent and unwonted liberties with her. While he denies the intent to have intercourse with her against her will and resistance, still he admits that intercourse was what he was after, and that such was his intention, though he expected to gain his ends by securing her final consent.

When the defendant undertook such a course of conduct, he did so at his own risk, and he must now be judged not so much by what he says as by what he did—by his conduct then and there. If she had killed him under those circumstances, while he was thus pursuing his unlawful quest, it would have been justifiable homicide. If a man thus bereft of his moral instincts and the duty he owes to those whom he should protect seeks to gain an unwilling consent by arousing the passions of his victim, and thus avoid the penalties of the statutes, he will have to do so without assaulting and outraging her physical person, else his intentions will be determined by the acts he commits.

A large number of authorities are cited by counsel for appellant to the effect that the state must show in such cases that the female "showed the utmost reluctance and used the utmost resistance." (*De Voy v. State*, 122 Wis. 148, 99 N. W. 455.) To our minds the trouble with a number of these authorities is that they reverse the order of the inquiry; they go about inquiring into the kind, character and nature of the fight put up by the woman, rather than the nature of the assault and evident and manifest purpose and intent of the assailant. For the purpose of reaching the conclusions announced in some of these cases it is necessary to as-

sume that, in the first place, a man has a right to approach a woman, lay hold on her person, take indecent liberties with her, and that unless she "kicks, bites, scratches and screams" (*People v. Morrison,* 1 Park. Cr. Rep. 625), to the "utmost of her power and ability," she will be deemed to have consented, and indeed to have invited the familiarity. Such is neither justice, law nor sound reason. On the contrary, under the statute a case might arise where a conviction could properly be had for assault with intent to commit rape, and still no personal encounter or contact have ever taken place. In fact, many such cases are reported. (23 Am. & Eng. Ency. of Law, 866, and notes; 1 McClain's Criminal Law, sec. 463; 10 Ency. of Ev. 607, and cases cited.)

In a prosecution on such a charge as this it is essential that the state prove every fact necessary to constitute rape, except penetration. What the assailant really meant to do, however, and the manner in which he meant to accomplish his purpose—whether by persuasion, force or fear—is a question of fact to be determined by the jury, and an appellate court should not disturb their finding simply because there is a conflict of evidence, but only for a failure of evidence on which to rest that finding and verdict. (23 Am. & Eng. Ency. of Law, 2d ed., 865.) It is true that she must not have consented, because if she did there would be no offense, but, on the other hand, men should not be allowed, under the protection of law, to construe every indiscreet act or word of a woman into a consent to carnal knowledge, nor should they be allowed to indulge in presumptions against the virtue and chastity of women. Rather let the evil-minded man incur the risk and hazard of misjudging the opposite sex and endeavoring to degrade them and destroy their peace and happiness. A little of this kind of law would go a long way with some of the brutes who unfortunately bear the names of men. There would be far less illicit intercourse if there were no assaults by the seducer in the first place, and the oftener he is brought to justice the less annoyance the community will suffer from the graver offenses toward which his conduct leads.

Appellant assigns as error the ruling of the court in admitting evidence of the complaint made by the prosecutrix to different parties immediately after the occurrence. In no instance did the witnesses give any detailed account of her story to them. Her appearance, condition and demeanor immediately after the assault were highly proper to be given to the jury, and more especially so where she made these complaints, as in this case, within less than an hour thereafter. The rulings of the lower court in the case at bar were clearly within the rule as announced by us in *State* v. *Fowler,* 13 Idaho, 317, 89 Pac. 759.

The ruling of the court in refusing to allow the defendant to tell the jury what his intention was when seeking such intimacy with the prosecutrix was clearly error, as his intent was the essential element of the offense. This error was cured by the defendant thereafter detailing the whole occurrence to the jury and stating fully his purposes and intentions. He testified that he meant to have intercourse with her if he could persuade her to consent, but that he had no intention of using force or violence on her.

This brings our consideration down to the instructions given, and the requested instructions refused by the court. The most serious complaint urged by appellant against the instructions is directed against instruction No. 2, which is as follows: ''To warrant a conviction of the defendant, therefore, of the crime charged in the information, to wit, an assault with intent to commit rape, the state must prove beyond reasonable doubt, first, that the defendant assaulted Annie Fuchs, the person named in the information, with the intent to then and there have sexual intercourse with her, the said Annie Fuchs; second, that at the time the said Annie Fuchs was a female, not the wife of the defendant; third, that such acts were committed within the county of Bear Lake, state of Idaho, at the time stated in the information, or within three years prior to the filing thereof.'' The complaint made against this instruction is that it leaves out the element of force or fear. There is no question but that a conviction could not rest on a showing alone of the facts covered by

this instruction, and it is worthy of note that the instruction does not tell the jury that they could convict on those facts alone, but it does tell them that such facts must appear beyond a reasonable doubt. This instruction is not in conflict with, but is rather supplemented by, instruction No. 6, which is as follows: "In order to convict the defendant of an assault with intent to commit rape, the jury must be satisfied beyond a reasonable doubt, from the evidence, that the defendant assaulted the prosecuting witness, with the intent at the time to overcome any resistance which she might offer, and therefore if you have any reasonable doubt as to whether the defendant intended to accomplish his purpose by force, you should find the defendant not guilty."

By this latter instruction the jury were clearly advised that they must find that the defendant intended to "overcome resistance which she might offer." This was as much a part of the instructions as was instruction No. 2, and it is to be inferred that the jury considered it along with the other instructions. (*People v. Bernard,* 2 Idaho, 193, 10 Pac. 30; *State v. Rice,* 7 Idaho, 762, 66 Pac. 87; *State v. Wetter,* 11 Idaho, 433; *State v. Bond,* 12 Idaho, 424, 86 Pac. 43.) In addition to this the court told the jury by instruction No. 21 that they should consider and construe the instructions together as a whole. If the court had told the jury that they could convict the defendant as charged, by showing a simple, assault, it would have been such error as no other instruction could have cured without wholly withdrawing such erroneous instruction.

In order to warrant a conviction of the crime of assault with intent to commit rape, the state must prove beyond a reasonable doubt every essential element of rape except the final consummation of the act. It must show beyond a reasonable doubt that the defendant made an assault upon the female, with intent to use such force as was necessary in order to have sexual intercourse with her against her will and without her consent. When those facts are shown, the crime is complete and a conviction is warranted. The jury should be instructed as to all these elements of the offense. The

authorities agree on this proposition,, and it is needless for us to undertake to cite or review the many cases cited by appellant on this point. On this point they are practically all to the same effect as the following authorities cited by appellant: *State v. Fowler,* 13 Idaho, 317, 89 Pac. 757; *State v. Colestock,* 41 Or. 9, 67 Pac. 418; *People v. Fleming,* 94 Cal. 308, 29 Pac. 647; *Hancock v. State* (Tex. Cr.), 47 S. W. 465; *Jones v. State,* 90 Ala. 628, 23 Am. St. Rep. 850, 8 South. 383; 23 Am. & Eng. Ency. of Law, 2d ed., 865.

The defendant also particularly complains of instruction No. 8, wherein the court told the jury that "every person charged with a crime under the laws of this state is presumed to be innocent until the contrary is proven beyond a reasonable doubt, and if after a careful examination of all the evidence you should have a reasonable and abiding doubt of the defendant's guilt, then you should acquit him." The appellant complains of the action of the court in inserting the word "abiding." It is true that there was no occasion for inserting this word in the instruction. It did not render the instruction any more intelligible. An examination of the many authorities will disclose that the appellate courts have never approved of the numerous attempts made by the trial courts to enlarge upon and elucidate this legal term of reasonable doubt. As a general thing, the words "reasonable doubt" are as simple and clear and easily understood by jurors as any definitions that the courts can give. Almost all the attempts that have been made to explain and interpret "reasonable doubt" have tended more to confuse and mislead than to explain and clarify. We are not prepared to say, however, that the use of the word "abiding" was prejudicial to the defendant. A "reasonable doubt" is certainly to some extent an "abiding" doubt. The courts have frequently approved of the instruction wherein the jury was told that "a reasonable doubt is one for which a juror can give a reason." (*People v. Dewey,* 2 Idaho, 83, 6 Pac. 103; *State v. Kruger,* 7 Idaho, 178, 61 Pac. 463.) If such an instruction is correct, it must follow that a doubt for which a juror can give a reason is in some manner and degree an

"abiding" doubt. We do not want to be understood as either sanctioning or approving the use of any modifying words in this connection, or of any change, alteration or modification of the usual, plain and generally approved instruction as to "reasonable doubt." We simply hold that this modification of the instruction does not appear to have prejudiced the defendant, and that no reason has been presented why the use of this word should have misled the jury. Taking the instructions all together, we do not think they misled the jury to the prejudice of any of the defendant's rights.

Counsel for defendant requested the court to give fifteen separate instructions, most of which covered the question of the intent of defendant to use force and violence sufficient to overcome any and all resistance which the prosecutrix might offer. Most of these requests were a correct exposition of the law on the subject, and it would have been highly proper for the court to have given some of them, as they were perhaps rather more explicit and comprehensive statements of the law on that specific point than those given. The court had, however, on its own motion instructed the jury on this point, and correctly stated to them the law by which they should be governed. There was not such a failure to instruct on the points requested by defendant as would authorize or justify us in reversing the judgment. We do not think it out of place to observe here, however, that we consider it would be much better to give the instructions requested by defendants on any given point, where such requests correctly state the law, and by that means eliminate a great many of these controversies over requested instructions and alleged failures to instruct on specific points of the law in the case.

The appellant has also lodged a complaint against instruction No. 17 given by the court. This instruction was on the law of circumstantial evidence, and tells the jury that a conviction may be had on such evidence. The appellant insists that there was no demand for such an instruction, and that the same was misleading to the jury, for the reason that the prosecution in no respect relied upon circumstantial evidence.

It is true that the case did not rest on circumstantial evidence. It should be borne in mind that there is a wide difference between circumstantial evidence and the circumstances surrounding a case. It is true that in almost any case there' are a great many things that may be shown as circumstances surrounding and leading up to the main transaction, which are not understood or considered as being of the *res gestae* or of the actual facts of the occurrence; yet these things are not what is meant by circumstantial evidence in the sense used in this instruction. We do not see, however, that the instruction given could have injured the defendant. If it had any weight at all with the jury, it was evidently considered by them in the light that the defendant's intentions must be judged by the circumstances surrounding and accompanying his several acts.

We do not think the court would be justified in reversing the judgment in this case on any of the grounds or for any of the reasons assigned by the appellant. It seems to us that the jury were justified in the conclusion they reached in this case, and we do not find any error in the rulings of the court or the giving or refusing instructions that seem to require the granting of a new trial.

Our examination of the entire record in this case, which has been very thorough and in detail, convinces us that the sentence pronounced against the defendant is too severe and entirely disproportionate to the gravity of the offense. For the most aggravated cases of this kind the statute authorizes the maximum penalty of fourteen years. Here the defendant was given a ten years' sentence. He was a young man twenty-six years old at the time of this occurrence, while the prosecutrix was twenty-eight years old, and had been for seven years actively engaged as a professional nurse. She was of mature years and more than ordinary experience and observation. She had never met the defendant more than once or twice before the day of this occurrence, and while her conduct was undoubtedly free from any evil purpose or intent, it was certainly indiscreet and ill-advised. It is admitted, even by the defendant himself, however, that she was a

virtuous woman and not the character her actions and con-
duct indicated to him. She testifies that she had always
been treated respectfully and kindly by the men whom she
had met, and that she thought nothing of anything that had
transpired until the defendant's first assault.

It is both the spirit and intention of our laws that sen-
tence shall be imposed in criminal cases for the protection of
society and the reformation of the·culprit. As we view this
whole case, two years' imprisonment of the defendant will be
as much protection to society and do him as much good as
would ten. Ten years would practically ruin him for life.
He is a young man yet, and it is to be hoped that this expe-
rience will serve to reshape and reconstruct his views re-
garding his duties and obligations to those about him, and
possibly inspire him with some higher and better notions
than those only of gratifying his lust and sensual passions.
We have concluded to modify the sentence to the extent of
reducing it to a term of two years in the state penitentiary.

The cause is remanded, with directions to the trial court to
resentence the defendant to imprisonment in the state peni-
tentiary for the term of two years.

Sullivan, J., concurs.


(July 30, 1907.)

ON PETITION FOR REHEARING.

[91 Pac. 318.]

SULLIVAN, J.—This is a petition for rehearing. Under
the provisions of section 8076, Revised Statutes, when the
judgment of the appellate court is rendered in a criminal
case, it must be entered in the minutes, and a certified copy
of the entry forthwith remitted to the clerk of the court
from which the appeal was taken. It would seem clear from
the provisions of that section that the appellate court does
not retain jurisdiction in criminal cases after the judgment

is entered and a certified copy thereof remitted to the trial court; for after the *remittitur* goes down, the general rule is that the appellate court has no further jurisdiction. However, we have gone through the petition for rehearing, and have concluded that a rehearing ought not to be granted, even if this court still had jurisdiction to hear such petition.

It is urged in the petition that the court misapprehended the facts in the case; that in the original opinion the court assumed that the prosecutrix went boat-riding with the appellant, when according to the evidence she went with Macbeth. It is admitted in the petition that the statement in the transcript leaves it somewhat ambiguous, at first impression, as to which person went boat-riding with the prosecutrix. It is clear, at any rate, that she went boat-riding with Macbeth. The defendant testified that his arms were lame from rowing the boat, but conceding that the defendant did not take the prosecutrix boat-riding, it makes no difference; the evidence is amply sufficient to sustain the verdict of the jury.

As to whether there were scratches upon the defendant's face, there is a conflict in the evidence, and the jury, no doubt, passed upon that question. As to whether the parties locked arms, the defendant testified that he took hold of the prosecutrix's arm, and they went outside and walked over to the barn where the mules were standing. The evidence also shows that they had their arms partly around each other.

We have gone carefully through the petition for rehearing upon the other points suggested, and are satisfied that if this court has power to grant a rehearing, the showing is not sufficient in this case, and the petition for a rehearing must be denied.

Ailshie, C. J., concurs.