STATE, RESPONDENT, *v.* HENNESSY, APPELLANT.

(No. 5,591.)

(Submitted January 9, 1925.   Decided March 28, 1925.)

[234 Pac. 1094.]

*Criminal Law—Attempt to Commit Rape by Force—Evidence
—Insufficiency.*

Attempt to Commit Rape by Force—Felonious Intent—Proof Required.
    1.   To warrant conviction for an attempt to commit rape by
    force, the evidence must be sufficient to establish beyond a reason-
    able doubt that the defendant assaulted the prosecutrix with the
    intention to accomplish his purpose at all events and notwith-
    standing any resistance on her part; hence if intent in the mind
    of the assailant to overcome by force all resistance which might
    be offered is absent, defendant is entitled to an acquittal.

Same—Evidence—Insufficiency.
    2.   Evidence adduced in a prosecution for an attempted rape by
    force reviewed and held insufficient to sustain a verdict of
    guilty, it presenting a case of urgent solicitation rather than of
    an intention by the use of force to overcome the resistance of
    the prosecutrix.

Same—Intent—When Evidence Insufficient.
    3.   Where the acts and conduct of defendant charged with an
    attempt to commit rape by force are shown to have been equivo-
    cal, or equally consistent with the absence of the felonious intent
    charged, the evidence is insufficient to warrant a verdict of guilty.

Same—What Does not Constitute.
    4.   Proof of indecency, immorality and grossly offensive and
    reprehensible conduct on the part of the defendant sufficient to
    constitute simple assault is alone insufficient to establish an at-
    tempt to commit rape by force.

*Appeal from District Court, Stillwater County; H. J. Miller,
Judge.*

JOHN HENNESSY was convicted of assault with intent to
commit rape, and appeals.   Reversed, with direction to dismiss
the information.

*Messrs. Norris, Hurd & Rhoades, Mr. James F. O'Connor, Mr.
B. E. Berg* and *Mr. P. R. Heily,* for Appellant, submitted a

brief; *Mr. George E. Hurd* and *Mr. O'Connor* argued the cause orally.

To convict one of an attempt to commit rape it must be shown that he intended to have connection with the woman by force and without her consent, and not merely by persuasion. (16 C. J. 116; 33 Cyc. 1493, 1494; *People* v. *Fleming,* 94 Cal. 308, 29 Pac. 647; *State* v. *Scholl,* 130 Mo. 396, 32 S. W. 968; *People* v. *Johnson,* 106 Cal. 289, 39 Pac. 622; *State* v. *Eslick* (Mo. App.), 216 S. W. 974; *Sparkman* v. *State,* 84 Fla. 151, 92 South. 812; *Hueboch* v. *State,* 94 Tex. Cr. 461, 251 S. W. 1079; *Newman* v. *People,* 223 Ill. 324, 79 N. E. 80; *State* v. *Johnson,* 26 Idaho, 609, 144 Pac. 784; *State* v. *Duckett,* 24 N. M. 28, 172 Pac. 189; *Weaver* v. *State,* 16 Okl. Cr. 564, 185 Pac. 447; *Ashford* v. *State* (Miss.), 35 South. 569; *State* v. *Fleming* (Mo.), 177 S. W. 299; *State* v. *Taylor,* 47 Or. 455, 8 Ann. Cas. 627, 4 L. R. A. (n. s.) 417, 84 Pac. 82.)

Defendant may indulge in improprieties amounting to aggravated assault but if there is not evidence to show the intent to overcome resistance with force a conviction cannot be sustained. (33 Cyc. 1494; *State* v. *Harrison,* 167 Iowa, 334, 149 N. W. 452; *Herrick* v. *Territory,* 2 Okl. Cr. 74, 99 Pac. 1096.) Likewise, solicitation, taking hold of and fondling of a female, indecent exposure of the person and other acts of similar nature, in the absence of proof of intent to use necessary force to overcome resistance will not warrant a conviction. (33 Cyc. 1494; *Robat* v. *State,* 91 Tex. Cr. 468, 239 S. W. 966; *Stoker* v. *State,* 93 Tex. Cr. 24, 245 S. W. 444; *State* v. *Butler,* 8 Wash. 194, 40 Am. St. Rep. 900, 25 L. R. A. 434, 35 Pac. 1093.)

*Mr. L. A. Foot,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, for the State submitted a brief; *Mr. Ketter* argued the cause orally.

The evidence was ample to warrant the jury in finding that the assault was with the intent to commit rape. The fact that an overt act is coupled with words of solicitation does not de-

stroy the effect of the act itself. (16 C. J., p. 118, sec. 98.) If at the time appellant seized prosecutrix he did so with the intent to have intercourse with her without her consent and to use such force as was necessary to overcome any resistance she might make, the moment he did so he became guilty of an attempt to commit rape. If he later abandoned his attempt and again restored his solicitations, this does not absolve him of the crime already committed. (*State* v. *Owens*, 26 N. D. 329, 144 N. W. 439; *People* v. *Johnson*, 131· Cal. 511, 63 Pac. 842; 33 Cyc. 1436; 16 C. J. 116, sec. 95.) Abandonment by defendant of his efforts to have intercourse with prosecutrix for any reason after the overt act has been committed with the intent to commit the crime, is no defense. (*People* v. *Johnson*, 131 Cal. 511, 63 Pac. 842; *People* v. *Dong Pok Yip*, 164 Cal. 143, 127 Pac. 1031; *State* v. *Owens*, 26 N. D. 329, 144 N. W. 439; 33 Cyc. 1436.)

HONORABLE BEN. B. LAW, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, delivered the opinion of the court.

The defendant and appellant was convicted on the sixteenth day of June, 1924, in Stillwater county, Montana, of the crime of assault with intent to commit rape upon the person of Martha O'Connor. The appeal is from the judgment of conviction and an order denying defendant's motion for a new trial.

The appellant contends that the evidence is insufficient to sustain a conviction for the crime alleged. Many assignments of error based upon the admission and rejection of evidence, the giving of instructions tendered by the state, and refusal of instructions offered by appellant are also made.

The charge against the defendant is an attempt to commit [1] rape by the use of force. Rape is defined by our statutes (sec. 11000, Rev. Codes 1921), as an act of sexual intercourse accomplished with a female not the wife of the perpetrator, under either of the following circumstances: Reciting six conditions under which the act of intercourse will constitute rape, if ac-

complished. The facts in this case restrict us to the consideration of the question whether the defendant attempted to commit the offense of rape as defined by subdivision 3 of the section above, namely: Where the female resists but her resistance is overcome by violence and force.

Section 11590, Revised Codes of 1921, defines an attempt to commit a crime as "an act done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime." Therefore, unless the evidence in this case was sufficient to establish in the mind of an impartial, deliberate and intelligent person beyond a reasonable doubt the fact that the defendant assaulted the prosecutrix with the intention of gratifying his passion on her person at all events, and notwithstanding any resistance on her part, he was entitled to an acquittal by the jury. (22 R. C. L. 1231, sec. 69; *Jones* v. *State,* 90 Ala. 628, 24 Am. St. Rep. 850, 8 South. 383; *State* v. *Cross,* 12 Iowa, 66, 79 Am. Dec. 519; *State* v. *Kendall,* 73 Iowa, 255, 5 Am. St. Rep. 679, 34 N. W. 843; *State* v. *Massey,* 86 N. C. 658, 41 Am. St. Rep. 478; *Daggs* v. *Territory,* 11 Ariz. 446, 94 Pac. 1106; *People* v. *Collins,* 5 Cal. App. 654, 91 Pac. 158; *State* v. *Neil,* 13 Idaho, 539, 90 Pac. 860, 91 Pac. 318; *Devoy* v. *State,* 122 Wis. 148, 99 N. W. 455; *Brown* v. *State,* 127 Wis. 193, 7 Ann. Cas. 258, 106 N. W. 537; *Barnett* v. *State,* 42 Tex. Cr. 302, 62 S. W. 765; 33 Cyc. 1432.)

In *Commonwealth* v. *Merrill,* 14 Gray (Mass.), 415, 77 Am. Dec. 336, the court said: "The nature of the charge presupposes that the intent of the prisoner was not carried out. It is therefore necessary that the acts and conduct of the prisoner should be shown to be such, that there can be no reasonable doubt as to the criminal intent. If these acts and conduct are equivocal, or equally consistent with the absence of the felonious intent charged in the indictment, then it is clear that they are insufficient to warrant a verdict of guilty."

In *State* v. *Needy,* 43 Mont. 442, 117 Pac. 102, this court said: "The gist of the offense [rape] as here defined is the use of force by the perpetrator overcoming physical resistance of-

fered by the female. If there is consent, however reluctantly it is given, even though accompanied by verbal protests and refusals, at any time during the act of intercourse, the act is not accomplished by force within the meaning of the statute, and hence is not rape." It, therefore, necessarily follows that there can be no assault with intent to commit rape by force, without an intent in the mind of the assailant to overcome by force all resistance which may be offered by the female and accomplish his purpose without her consent.

The facts in the present case as detailed by the prosecutrix [2] are substantially as follows: The defendant was a priest of the Catholic church, residing at Columbus, Montana. The ladies of the Altar Society of the church had employed the prosecutrix to attend to the necessary housework in the home of the priest. On January 11, 1924, the prosecutrix went to the home of the defendant between 1 and 2 o'clock P. M. for the purpose of doing the customary house cleaning. She made the usual preparations for doing her work, such as kindling a fire, heating water, changing her shoes, adjusting the furniture and removing the rugs. While she was in the parlor the defendant appeared and they exchanged the friendly greetings of "Good morning." Some discussion was then indulged about why she had not come sooner and her employment as his housekeeper. The defendant then approached her, put his arms around her body and said: "Yes, you be my housekeeper," to which she replied, "Well, I don't know; I will have to think about it." He again requested that she be his housekeeper, and stated that he would give her $30 monthly, and if she would be good to him he would give her more. She requested that he release her from his arms, as she had to be home before 5 o'clock, to which request he responded and replied, "All right," and left the room. She proceeded to do her work and went to the bedroom, where the defendant again approached her with two glasses of wine, requesting her to drink. She put her glass on the "chiffonier" and said to him, "I will drink it after I get through with my work," to which he relied, "All

right." The defendant then approached her, threw her on the bed and held her there with one leg over her body, his right arm under her head and neck. She asked him to get away, and he said, "Now, come on, I want to go. I am human, ain't you?" to which she answered, "No," struggled, got away from him, and fell on her knees. She then ran into the kitchen and he followed. While they were on the bed he was feeling of her body, pulling up her clothes and feeling her limbs. She thought he had her on the bed about four minutes, and *most of the time* she was struggling. She could breathe easily. In the kitchen he held her between his legs and kissed her three times. He wanted her to go to the bedroom again and "persuaded her to go all the time." He said, "Come on, I want to go; I am human, ain't you?" to which she replied, "You preach the Gospel and want to do such a thing; I think it is awful." He swung away and said, "I don't fear God, the devil or any human," and she replied, "I do." He then left her and she thought he had gone to the bedroom. She then took a pail of water and was going to go in to finish the bedroom, but met the defendant in the hall, where he grabbed her, held her tightly against the wall so she "couldn't say a word, couldn't breathe, or move a finger." For just how long, she did not know. He said, "Come on; go with me to the bedroom"; to which she replied, "No." Then he tore his clothes open and said, "If you won't go in the bedroom with me, put your hand down here and feel him, feel of my body." She then said to him, "You go in the bedroom and I will come." He replied, "Will you come?" and she said, "Yes." He released her and took hold of her arm and said, "Come now," to which she replied, "Please let me go to the kitchen first," and he replied, "All right, you will come then?" and she said "Yes." He then crossed the hall toward the bedroom, and when halfway across the room he turned and said, "Don't tell anybody"; and she replied, "No." She then went to the kitchen, changed her slippers and gathered her clothes, and went to Mrs. Marvick's, to whom she told an account of the assault. Mrs. Marvick did not verify her in this

statement.    The condition of the health of the prosecutrix at the time was not good; she weighed 112 pounds and was forty-two years old.    The defendant was forty-five years old, six feet two inches tall and weighed 225 pounds.    The house in which the assault is alleged to have taken place was surrounded by homes occupied by people; the nearest to that of the defendant was Mrs. Snyder's, situated within eighty or ninety feet just directly across the street.

Can it be said that this evidence, giving it the complete benefits of its most favorable interpretation for the contention of the state, is sufficient in probative value to satisfy an impartial and reasonable mind beyond a reasonable doubt that the defendant intended at any time to overcome the physical resistance of the prosecutrix with force, and accomplish rape?    If so, we naturally inquire, why did he not accomplish his purpose? The relative disproportion of weight and strength of the prosecutrix and the defendant was so great that, in our opinion, it cannot be successfully contended that he could not have overcome the utmost physical resistance at the command of the prosecutrix.    They were lying on the bed; he held her with his right arm around the shoulders and neck, and with his left hand he felt of her body and limbs and pulled up her clothing.    He had one of his legs across her body.    Her hands were free with which to fight, had she thought it necessary to protect her virtue.    Her voice was at her command with which she could have attracted the near-by neighbors, had she believed she was in danger of being ravished.    She did not use it.    She struggled away from him, went to the kitchen and was followed. There she was held and kissed three times.    He wanted to go to the bedroom again, and, using the language of the prosecutrix, "He persuaded me to go in all the time."    His language was, "Come on, I want to go; I am human, ain't you?" and not, "You must, you will, or you shall submit to my desires."    He left her in the kitchen and she thought he had gone to his bedroom.    She then took a pail of water and was going into his bedroom to finish her work.    Can it be reasonably contended

that she, thinking an attempt was being made to rape her, would follow her assailant into the very room from which she had just, through a struggle, escaped to avoid being ravished? However, she did not get to the bedroom; she met the defend- ant in the hallway, where she was seized and held against the wall so tightly she could not breathe, she could not move a finger. He then released her and said, "If you won't go in the bedroom with me, put your hand down here and feel him, put your hand down here and feel my body." She told him to go in the bedroom and she would come, after going into the kitchen. He crossed the hall and when about halfway across, said to her, "Don't tell anybody," and she said "No." She at no time during the encounter struck the defendant, scratched him or fought in any manner, except to struggle to get away from him when on the bed. She did not yell, scream or call for help or endeavor to attract any other person to the home, although she admittedly knew that people were within less than 100 feet away. Her clothes were not disarranged, so far as the evidence shows; her hair was not disheveled. If there was an abrasion or bruise upon either of the participants, it is not disclosed by the testimony. Defendant's course of con- duct was no doubt offensive to prosecutrix, but her evidence dis- closes a course of conduct on her part clearly inconsistent with the idea that she believed at any time that she was in danger of being ravished.

Just what action on the conceded facts for the purpose of this decision, although denied by appellant, did the defendant take that would indicate to a normal, unbiased mind that he in- tended to overcome the active resistance of the prosecutrix and rape her? Will any normal, fair-minded person believe that he could not have accomplished his purpose when they were on the bed, had he been determined at that time to over- come her resistance? Can anyone believe she escaped from her position on the bed against his will? The admitted physical facts and common knowledge of mankind negative such a belief or contention. Are we to believe that a man determined to

rape at all events will repeatedly kiss, entreat and beg for the consent of his victim, and when he has concluded that consent cannot be obtained, ask that she at least feel of his sexual organ, and upon her departure request that she tell no one about the affair? Such contentions are contrary to reason, common knowledge and human experience.

Obviously, the rule of law declared in *Commonwealth* v. *Merrill, supra,* and applicable in all criminal cases, ought to be applied with its full force and vigor in rape cases. It is universally recognized, as this court said in *State* v. *Moe,* 68 Mont. 552, 219 Pac. 830, that "the charge is easily made and hard to disprove—'hard to defend against even by one who is guiltless.'"

The defendant's conversation with the prosecutrix must be [3] interpreted in the light of the common understanding of the words uttered. The inferences to be drawn from his actions, as testified to by the prosecutrix, must be such as a reasonable and fair mind would make, taking into consideration the surrounding circumstances. His conversation with the prosecutrix to our minds signifies entreaty, an urgent solicitation, and not a determination and intention to use force to overcome resistance. His actions, associated with his words, to us indicate his desire and intention to determine whether the prosecutrix would offer resistance to his advances. Resistance having been offered by the prosecutrix, he desisted. Such conditions, to our mind, are more consistent with the absence of the criminal intent necessary to sustain a conviction in this case than its presence.

We have been unable to find a case in which a conviction has been sustained under similar conditions and circumstances. The state, in its brief, has given us no citations of authority to sustain its contention as to the sufficiency of the evidence to uphold a conviction.

We credit every physical act of the defendant as detailed by the prosecutrix with the full force of every reasonable deduction or inference, and every word uttered with its most comprehensive meaning, and we are unable to find fact, infer-

ence or deduction which in our judgment will sustain the contention of the state that the defendant at any time entertained the intention to overcome the physical resistance of the prosecutrix and have sexual intercourse with her without her consent. Accepting her story as true, she was, of course, offended, [4] assaulted and aggravatingly insulted. From her testimony, if true, we must concede that the defendant desired to have sexual intercourse with her, and as said in *Commonwealth* v. *Merrill, supra,* "There is ample proof of gross indecency and lewdness" and simple assault. However, such facts alone do not constitute an attempt to commit the crime of rape. They will support a charge of assault of an aggravated character, and, as to this, the state was not without an ample remedy, and available and adequate statutory provisions for punishment in the event of a conviction. The defendant's conduct, as detailed by the prosecutrix, was reprehensible, the more so because of his station in life, and may not be justified or approved in morals or law. The evidence is insufficient to convict the defendant of the commission of the felonious charge of assault with intent to commit rape, but it does not acquit him of immorality, indecency and grossly offensive and reprehensible conduct toward the prosecutrix, if her story be true.

The judgment and order appealed from are reversed, with direction to the district court to dismiss the case.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS, concur.

Rehearing denied April 11, 1925.