## The State of Louisiana *v.* Peter, a slave.

Article 78 of the Constitution of 1852 vests Justices of the Peace " with such criminal jurisdiction as shall be provided by law."

According to sections 21, 22, 26, 27 and 28 of the Act of 19th March, 1857, relative to the trial of slaves accused of capital offences, Justices of the Peace act, in the trial of slaves, not only as jurors, but also in an official capacity, and cannot be excluded from the trial of a slave, because they have presided and taken part in a previous trial of the same slave, for the same offence.

Before a confession is allowed to go to the jury, the witness to whom it was made should be interrogated as to whether it was voluntary.

If he testifies that the confession was voluntary, then the counsel for the accused may impeach his testimony by his former statement to the contrary.

Although the laws relative to the organization of the tribunals for the trial of slaves, in the country parishes, do not contemplate that the presiding Justices of the Peace should charge the jury on points of law, yet it would not be illegal if they thought proper so to charge them.

In a case of rape, the evidence of witnesses to prove the details of the complaint made by the prosecutrix against the accused, immediately after the commission of the offence, is admissible as part of the transaction, and not as proof of the truth of the statements.

Slaves are prosecuted as persons, and their right to have all the testimony that may establish their innocence, is superior to the principle which would exclude their owners, on the ground of interest, and their testimony ought to be received, subject to the credibility which the jury may attach to it.

APPEAL from the Justice's Court of the Parish of West Feliciana. *W. F. Hardee*, District Attorney, for the State. *McVea* and *Muse & Hardee*, for defendant and appellant.

COLE, J. The slave, *Peter*, having been tried and convicted, under the Act of 19th March, 1857, for attempting to commit a rape on the person of a free white female, was sentenced to capital punishment. Sess. Acts, 1857, p. 231.

He has appealed, and relies on several bills of exception to the ruling of the court, which will be considered in their order.

1. " Because *G. W. Catlett*, a Justice of the Peace, having already presided at a former trial of the same slave, accused of the same offence, when the jury could not agree, was incompetent to try him again."

Article 78 of the Constitution of 1852 vests Justices of the Peace " with such criminal jurisdiction as shall be provided by law."

The Act of 19th March, 1857, sections 21 and 22, p. 231, provides, that whenever it shall be necessary to try a slave accused of a capital offence, the Justice of the Peace before whom the complaint shall have been made, shall notify another Justice in the parish, and shall require such Justice to attend at his office, for the purpose of selecting ten owners of slaves for the purpose of forming the tribunal for the trial of the accused. (See also sections 26 and 28.)

Sections 27 and 28 declare that if the offender be convicted of any crime punishable with death, the said Justice or Justices shall sign a sentence to that effect, and that the said Justices, or either of them, are authorized to summon and compel all persons to appear and give evidence in all prosecutions of slaves.

These sections show that the Justices of the Peace act, in the trial of slaves, not only as jurors, but also in an official capacity; and it does not seem reasonable that, as justices, they should be excluded from the trial of a slave, because they have presided and taken part in the previous trial for the same offence, any more than District Judges are when placed in a similar position.

It is unnecessary, in the present case, to decide whether he would have been

66

competent, if the record showed that at the first trial he had voted for the conviction of the accused; but it would seem he might, unless his mind was so impressed with the guilt of the accused, that his opinion could not be changed by evidence of a different nature at the second trial, than at the first.

2.   Upon the trial, the counsel for the accused propounded to *Mrs. Knight*, a witness on the stand, the following question :

"Were you, or not, at *Mr. Samford's* house during the evening of Monday, the 22d of February, 1858, and if so, did you, or not, hear *Mr. Samford* state that he had used threats against the boy *Peter* to induce him to confess ? "

The counsel for the State objected to this question, on the grounds, that it was hearsay, and was not the best evidence; that the best witness of the fact would be *Mr. Samford*, and that the object of the testimony sought to be introduced was to contradict a witness not yet on the stand.

It appears from the remarks of the Justices in the bill of exceptions, that the State proposed to prove the confession of the accused to *Mr. Samford*, a witness on the stand; that the counsel for the accused objected, and offered *Mrs. Knight*, a witness, to prove that the confession was made under threats, and the Justices were of opinion, that the questions as to threats ought to have been propounded in the first place to the witness *Samford*, before introducing testimony to discredit him.

There was no error in excluding the testimony *at the time* when it was proposed to be offered.

The usual and proper rule of proceeding is to first interrogate the witness to whom a confession has been made, before even it has been given to the jury whether it was voluntary.   1st Greenleaf on Evidence, § 219.

If the witness testifies the confession to have been voluntary, then it would be competent for the counsel of the accused afterwards to impeach his testimony by his former statements, that the confession had been induced by threats, or violence, or any illegal causes.

The tribunal did not reject the offered evidence of *Mrs. Knight*.   It only required the question, as to threats, to be asked, in the first place, of *Samford*.

It also appears from the next bill of exceptions, that *Samford* testified the confession to have been voluntary.   It was, therefore, in the power of the counsel of the accused, if it were possible, to have discredited the testimony.

3.   The counsel for the accused asked the Justices to charge the jury, that the testimony of *Samford*, a witness in the case, should not be considered by them in making up their verdict, because he stated in his examination in chief, that he asked the accused, *Peter*, " what could have induced him, *Peter*, to do this ?" " what could have induced him, *Peter*, to do this thing to this girl?" and various other questions of the same kind, at the same time; and because *Samford* did also state, that the confessions of *Peter*, made the first time, were made in answers to questions put directly by witness to *Peter*, and during said time that said *Peter* was handcuffed.

The Justices declare, in their addition to the bill of exceptions, they were of opinion that " the confession was given without threats or inducements, the witness, *Samford*, having sworn that the confession was entirely voluntary," and they refused so to charge the jury, on the ground that there was no law authorizing them to give any charges.

The laws relative to the organization of the tribunals for the trial of slaves in the country parishes, do not appear to contemplate that the presiding Justices of

the Peace should charge the jury upon points of law, although, perhaps, it would not be illegal, if they thought proper to charge them.

4.  There was no error in permitting *Mrs. Dudley* and other witnesses to prove the details and circumstances, and the particulars of the complaints made by the prosecutrix against the accused immediately after the commission of the offence, as a part of the transaction, and not as proof of the truth of the statements as made.  Wharton, Crim. Law, p. 441; Starkie on Ev., vol. 2, p. 951; Greenleaf on Ev., vol. 1, p. 167, § 123.

Such evidence is generally admitted after the complainant has testified to the nature of the offence committed against him, in order to show his credit and the accuracy of his recollection.

We have been thus particular in considering the bills of exceptions, because there are two, relating to the same point, which oblige us to reverse the judgment.

The counsel of defendant offered to prove an *alibi* by *Mr.* and *Mrs. Sadler*, the owners in community of the slave *Peter*.  The testimony was objected to, on the ground of interest in the witnesses, and was excluded by the court.

This testimony ought to have been admitted.

Slaves are prosecuted as persons, and they ought not to be deprived of the testimony of their owners, because the verdict may injure them in a pecuniary view.  The point at issue is not their value, but their guilt or innocence.

The rights of a slave to have all the testimony that may establish his innocence are superior to the principle which would exclude his owners on the ground of interest, and their testimony ought to be received, subject to the credibility which the jury may attach to it.

Besides, the interest of the owners is not direct, certain, or immediate, for they cannot know whether the slave will be convicted, or if convicted, whether he will be condemned to death, or corporeal punishment, as the jury have the right to inflict in certain cases, as in the present, either punishment.  Sess. Acts, 1857, p. 232, § 28.  Greenleaf on Ev., § 386.

It is, therefore, ordered, adjudged and decreed, that the verdict and judgment appealed from, to-wit, of the two Justices and the ten owners of slaves, be avoided and reversed, and that this case be remanded for further proceedings according to law.

MERRICK, C. J., concurring.  I am inclined to think the Justices of the Peace ought to have charged the jury, as required.  They exercise judicial functions and also act as jurors.  They cannot, therefore, be challenged, and the sentence of the tribunal receives its vitality and force only through the *judicial power* vested in the Justices of the Peace.  The concurrence of the jurors is a prerequisite to the judgment; but when rendered, the judgment receives its judicial force from the Justices of the Peace themselves.  Const., Arts. 61 and 81; Acts 1857, §§ 27 and 28, p. 232; *State* v. *Isaac*, 3 An. 360.

As an appeal *is given as in other cases*, I think the accused is entitled to have the law relied upon by the State against the accused given in charge to the jury, in order that he may present, by bills of exceptions, such legal questions to the appellate court, as arise during the trial.  I know that some inconvenience may result from a want of experience on the part of magistrates; but a discussion of the questions with the counsel for the accused and District Attorney will enable them to charge the law substantially as it exists.  See Act, 1857, sec. 39; Acts 1855, p. 37.

I prefer to rest my concurrence upon this ground.