EL PUEBLO, DEMANDANTE Y APELADO, *v.* ANGLADA, ACUSADO Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de Aguadilla
en un caso por violación.

No. 628.—Resuelto en enero 14, 1914.

VIOLACIÓN—MANIFESTACIONES DE LA OFENDIDA HECHAS A UNA TERCERA PERSONA
INMEDIATAMENTE DESPUÉS DEL DELITO—RES GESTAE—GRITOS DE LA VÍC-
TIMA.—Cuando una mujer inmediatamente después de haber sido violada
grita y dirigiéndose a su suegra que estaba cerca del sitio en donde se
cometió el delito le manifiesta quién la ha violado, tales manifestaciones

hechas en esas circunstancias no constituyen prueba de referencia, sino que por el contrario son admisibles para probar la comisión del delito.

ID.—ERRORES SIN IMPORTANCIA—ADMISIÓN DE PRUEBAS.—Aun en el supuesto de que no fuera admisible como prueba las manifestaciones de la ofendida hechas a una tercera persona inmediatamente después del delito, en este caso como se probó la comisión del crimen por otra prueba adicional, el acusado no ·fué perjudicado por la admisión de dichas manifestaciones.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

Abogados del apelante: *Sres. Travieso e Iriarte.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La presente fué una causa por violación. La cuestión principal suscitada ante este tribunal fué sobre la admisión como prueba de ciertas manifestaciones hechas por la perjudicada Isolina Rodríguez a su suegra Andrea González inmediatamente después de ocurrido el hecho de la supuesta violación.

Declaró primero Isolina Rodríguez quien refirió que ella y su marido iban a pasar temporadas a casa de su madre Andrea González; que en la mañana del 25 de junio, 1912, salió de la casa de su suegra con el objeto de lavar algunas ropas en una quebrada que estaba a corta distancia de la casa. Mientras se encontraba allí lavando, como ha declarado, la cogió y tiró hacia atrás José Anglada que estaba armado con un cuchillo, quien después de tumbarla al suelo realizó el acto criminal que ha dado origen a esta acusación. Hizo referencia a cierta lucha que tuvo con el acusado y en la que éste le desbarató el traje, no pudiendo ofrecer verdadera resistencia ni gritar porque la amenazó con matarla y además porque portaba un cuchillo. Al verse ultrajada de tal modo perdió el sentido y cuando volvió en sí ya se había marchado Anglada. Ella entonces se levantó gritando y al oir sus gritos vino su suegra hacia ella.

Carlas Morales dijo que estaba lavando ropas en la quebrada más abajo de donde se hallaba Isolina también lavando. Que no vió a Isolina porque la declarante quedaba en un hoyo y la quebrada hace curvas, pero cuando iba para su casa oyó

gritos y vió que José Anglada llegaba a la casa de su tío León Anglada y oyó la voz de Isolina Rodríguez que decía: "¡Ay, Andreita! ¡Ay, Andreita!" en un tono duro, como una persona pidiendo socorro y vió a la suegra que la venía a alcanzar. Andrea González fué llamada entonces declarando en sustancia que era la suegra de Isolina Rodríguez; que vió salir a lavar a Isolina el día del supuesto delito, pero que no estuvo mucho tiempo, porque entre nueve y diez la llamó dando gritos; que ésta última gritaba desde el otro lado del monte "¡Ay, Andreita! ¡Ay, Andreita!"; que corrió hacia Isolina que venía muy de prisa con sus ropas recogidas llorando y gritando, diciendo que José Anglada había llegado a la quebrada donde ella estaba con un cuchillo para que ella se rindiera a él, no habiendo referido nada más Isolina.

En los autos aparece una exposición del caso y también un pliego de excepciones por separado.

El pliego de excepciones expresa que en momentos en que declaraba la testigo Andrea González, el Fiscal le preguntó qué le había dicho Isolina Rodríguez cuando llegó llorando y gritando a la casa, oponiéndose la defensa a que la testigo contestara a dicha pregunta, fundándose en que las manifestaciones hechas por la parte perjudicada a una tercera persona poco tiempo después de realizado el acto que se considera como delictivo son de referencia y no pueden tomarse en consideración en el juicio. El Fiscal alegó que las manifestaciones hechas por Isolina Rodríguez a Andrea González eran parte del *res gestae,* y la corte resolvió que tales manifestaciones eran admisibles como prueba, toda vez que formaban parte del *res gestae* por haber sido hechas inmediatamente después del supuesto delito y cuando todavía duraba la impresión moral del suceso.

Entonces la testigo repitió las manifestaciones de Isolina a que ya hemos hecho referencia, tomando excepción la defensa a la resolución de la corte.

Emilia Alvarez sintió gritando a Isolina Rodríguez y fué corriendo hacia ella y vió a José Anglada que iba apresura-

damente para la casa de su tío.   Oyó el grito de "¡Ay, An-
dreita! ¡Ay, Andreita!''

Ramón Rivera, cuñado de Isolina Rodríguez declaró que
vió a José Anglada al día siguiente de haber sido excarcelado
bajo fianza, diciendo éste último que deseaba encontrarse con
el marido de Isolina Rodríguez para que le pagara la noche
que había pasado en la cárcel; que había hecho con Isolina
lo que quiso, y que no sabía cómo lo habían denunciado siendo
a gusto de ambos al acto realizado.

Por algún motivo que no aparece claramente expresado
en los autos compareció José Anglada ante el Juez Municipal
Betancourt, quien juró que todo el día en que se alega que se
cometió el delito estuvo el acusado trabajando en la Compa-
ñía Plata Agricultural como capataz, habiendo declarado el
juez municipal en cuanto a este extremo.

Enrique Roselló declaró que era listero de la Compañía
Plata Agricultural y llevaba una lista de los peones y capa-
taces que trabajan allí, y que en las listas del 25 de junio no
aparece el nombre de José Anglada, ni como capataz ni como
peón.

La defensa no introdujo prueba alguna.

Se verá que no se formuló objeción de ninguna clase a la
declaración de Andrea González en lo que respecta a los gri-
tos de Isolina Rodríguez, o sean los de "¡Ay, Andreita! ¡Ay,
Andreita!''; cuyo proceder fué correcto, pues creemos que es
una cuestión que ha quedado bien determinada en todos los
Estados Unidos, que era cosa natural que una mujer gritara
de tal modo inmediatamente después de ser acometida, cuyos
gritos eran propiamente admisibles como una queja.   Según
la ley común antigua, la mujer estaba en la obligación de gri-
tar después que había sido ultrajada de tal manera.   Véase
Wigmore, párrafo 1760.

Creemos que las frases relatadas por Isolina Rodríguez a
su suegra se relacionan de modo tan íntimo con el suceso que
en realidad son enteramente admisibles como parte de los
mismos clamores de la perjudicada, por ser tan íntima la rela-

ción causal de las palabras pronunciadas poco tiempo después del supuesto delito. En muchos Estados son perfectamente admisibles esta clase de manifestaciones como parte del *res gestae*. *State* v. *Imlay,* 61 Pac., 557; *Castillo* v. *The State,* 31 Tex. Cr. Rep., 145; *People* v. *Gage,* 62 Mich., 271; *State* v. *Peter,* 14 La. Ann., 521; *Snowden* v. *U. S.,* 2 App., D. C., 89; *State* v. *Horan,* 32 Minn., 396, 50 A. R., 584, y otros casos que en los mismos se citan. Mayor liberalidad en la aplicación de la regla sobre *res gestae* se observa en los casos de *Ins. Co.* v. *Mosley,* 8 Wall, 399; *MeMurrin* v. *Rigby,* 80 Iowa, 326, 45 N. W., 878.

La liberalidad de la Corte Suprema de los Estados Unidos no se observa en California, ni Massachusetts u otros Estados. *Commonwealth* v. *Trefethen,* 157 Mass., 189; *People* v. *Ah Lee,* 60 Cal., 85; *People* v. *Dewey,* 2 Idaho, 83, y casos citados en estas decisiones y los de Iowa, Missouri y otros Estados que adoptan las mismas. Sin embargo, no hemos podido encontrar en las investigaciones que hemos hecho, un caso en que no hayan sido admitidas como prueba las manifestaciones hechas por la perjudicada tan poco tiempo después de la comisión del delito.

El tratadista Wharton en su obra sobre Evidencia Criminal, párrafo 273, indica que la mejor regla en cuestiones ordinarias de *res gestae* consiste en no admitir como prueba las declaraciones hechas después de consumado el hecho, mas hace referencia a las excepciones que hay en casos de violación, y expresa que la excepción debe limitarse a tales casos. Continúa indicando en el párrafo 262, y siguientes, que *res gestae* son hechos que prácticamente hablan por sí mismos, e indudablemente que en este caso las exclamaciones espontáneas y palabras de Isolina Rodríguez hablaron por sí solas.

El Sr. Wigmore en su obra sobre Evidencia determina en el párrafo 1139, que una de las excepciones a la regla respecto a declaraciones de referencia es la que permite como declaraciones de referencia las manifestaciones espontáneas de una persona que ha sufrido una excitación repentina por un

acontecimiento extrínsico, y dice en el párrafo 1747 que: "El principio general está basado en la experiencia de que bajo ciertas circunstancias externas de conmoción física puede producirse una fuerte excitación nerviosa que paralice las faculttades reflexivas y se pierda el dominio de las mismas de manera tal que lo que entonces se diga no sea sino la contestación espontánea y fiel de las sensaciones y percepciones que verdaderamente ha producido la conmoción externa" y que "Como estas expresiones obedecen directamente a la acción de los sentidos que no puede ser dominada, y se verifican en tan corto tiempo que no puede haber lugar a reflexionar sobre consideraciones de interés propio, en tales circunstancias deberán admitirse las manifestaciones como especialmente fidedignas  *  *  *;" y hace citas dicho tratadista de las decisiones de varias cortes.

La siguiente cita del Juez Presidente Bleckly en el caso de *Travelers' Ins. Co.* v. *Shepard,* 85 Ga., 751, 776, 12 S. E., 18, es especialmente de aplicación, a saber:

"La voluntad del que habla no habrá de tener oportunidad razonable para arreglar o modificar las palabras. Dicha voluntad ha de convertirse y permanecer inactiva por lo menos en lo que respecta a la deliberación para arreglar el lenguaje o elegir las palabras. Por otra parte sus palabras además de ser pronunciadas en el momento del suceso debe serlo en el mismo lugar en que ocurre. La persona ha de estar en la escena del accidente, cerca de ella o en alguna parte esencial de la misma. Sus manifestaciones serán la expresión de la naturaleza humana, del *genus homo,* más bien que del individuo. Solamente un juramento puede asegurar la veracidad individual. Pero el impulso espontáneo podrá ser una sanción suficiente de la expresión del hombre en tales circunstancias; del hombre a diferencia de este o aquel hombre en particular. Es cierto que la expresión verbal en cada caso es la de una persona individual. Pero si el estado de su mente es tal que de momento su individualidad queda en silencio y se pierde, convirtiendo su voz en la de la humanidad más bien que la suya, la ley considera en cierto modo fidedignas sus expresiones."

Se verá también siguiendo los razonamientos de Wigmore en cuanto a violación, en los párrafos 1760 y siguientes, que

este correcto e ilustrado autor era partidario de la liberalidad en casos de violación cuando las manifestaciones que se hacen están íntimamente relacionadas con el suceso mismo, a lo que llama el autor la aplicación característica del principio sobre exclamaciones espontáneas.

El caso del *Pueblo* v. *Maldonado,* 17 D. P. R., 23, no es de . aplicación. En dicho caso todas las quejas se hicieron mucho tiempo después de ocurrido el accidente. La misma corte trató de eliminar las palabras, lo que hizo imperfectamente.

No tenemos duda alguna con respecto a la admisión de las manifestaciones hechas por Isolina en vista de las circunstancias del caso. Además aun en caso de duda, no creemos que el acusado sufrió un verdadero perjuicio por el hecho de que fueran admitidas. Lo que realmente le afectaba, si algo le efectó, fué el grito espontáneo de Isolina Rodríguez de "¡Ay, Andreita! ¡Ay, Andreita!", contra el cual no se formuló objeción. No fueron necesarias las manifestaciones de Isolina Rodríguez para relacionar al acusado con el delito. Se le vió muy cerca de la escena del suceso de cuyo sitio se marchó. El acusado admitió el hecho del contacto carnal. Trat5 de establecer la defensa de coartada que resultó ser falsa. Varios testigos oyeron el grito de "¡Ay, Andreita! ¡Ay, Andreita!", además de la suegra, y en tales condiciones entendemos que son de aplicación las disposiciones de la ley de mayo 30, 1904, al disponer que no se revocará la sentencia a no ser que el error que aparezca de los autos haya tenido por objeto perjudicar los derechos de alguna de las partes y que se formuló debidamente excepción en la corte inferior. No somos de parecer de que por el hecho de admitirse la prueba contra la cual se formuló objeción se hubiera perjudicado al acusado, sobre todo habiéndose introducido prueba de otra procedencia para probar la comisión del delito.

Se hicieron otros dos señalamientos de error. En cuanto a uno de éstos, no existe nada en la exposición del caso que justifique su revisión. El otro hace referencia a que la prueba

era insuficiente para declarar culpable al acusado, el cual fué suficientemente discutido al considerar la excepción.

Debe confirmarse la sentencia.

*Confirmada.*

Jueces concurrentes: Sres. Asociados del Toro y Aldrey.

El Juez Presidente Sr. Hernández, no formó parte del tribunal en la vista de este caso.